GRAHAM & Another *v.* BOSTON, HARTFORD & ERIE RAILROAD COMPANY & Others.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

Argued April 15, 16, 19, 1886.—Decided May 10, 1886.

The Boston, Hartford & Erie Railroad Company became a corporation of the State of New York, by virtue of the act of the legislature of that State, passed April 25, 1864, Laws of New York, 1864, ch. 385, p. 884, it being already a corporation of Connecticut, Massachusetts and Rhode Island.

A meeting in one of several States of the stockholders of a corporation char-

tered by all those States is valid in respect to the property of the corporation in all of them, without the necessity of the repetition of the meeting in any other of those States.

A railroad corporation, which, though made up of distinct corporations, chartered by the legislatures of different States, has a capital stock which is a unit, and only one set of shareholders, who have an interest, by virtue of their ownership of shares of the stock, in all of its property everywhere, has a domicil in each State, and the corporation or shareholders can, in the absence of any statutory provision to the contrary, hold meetings and transact corporate business in any one State, so as to bind the corporation as to its property everywhere.

The Berdell mortgage, executed by the Boston, Hartford & Erie Railroad Company, March 19, 1866, was valid originally, and the proceedings of the company whereby the mortgage was made were ratified by the legislatures of the four States above named, which included the holding in the city of New York of the meeting of the shareholders which authorized the making of the mortgage.

The invalidity of some of the bonds secured by the mortgage cannot affect the validity of the mortgage or the validity of proceedings for its foreclosure.

The mortgage having been duly foreclosed under proceedings in a suit to which the corporation was a party, and the suit being still pending, a shareholder in the corporation cannot, by a bill in equity in another court, attack the foreclosure proceedings for fraud in conducting them. His remedy is by an application in the foreclosure suit.

Such shareholder is a party to proceedings in involuntary bankruptcy against the corporation, and, therefore, cannot collaterally impeach the proceedings. His remedy is to apply to the bankruptcy court, or to seek a review in the Circuit Court.

The bill being filed fourteen years after the making of the mortgage, ten years after the commencement of the bankruptcy proceedings, nine years after the entry of the decree of foreclosure, and seven years after the foreclosure became absolute and the road was conveyed to a new corporation formed by the holders of bonds secured by the mortgage, a demurrer to the bill for laches was sustained.

Bill in equity. The case is stated in the opinion of the court.

*Mr. Eugene M. Johnson* and *Mr. Benjamin F. Butler* (*Mr. R. A. Pryor* and *Mr. C. F. Beach, Jr.*, were with them), for appellants.

*Mr. Charles M. Reed* for Healey appellee.

*Mr. C. S. Bradley* and *Mr. J. C. Gray* for appellees Bradley, Chapman and Barnard.

*Mr. William G. Russell* and *Mr. William Caleb Loring* for the New York & New England Railroad Company, and Hart and Clark appellees.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a bill in equity, filed in the Circuit Court of the United States for the District of Massachusetts, on the 8th of July, 1880, by William F. Graham, an alien, the owner of 500 shares of the capital stock of the Boston, Hartford and Erie Railroad Company, on behalf not only of himself, but of every stockholder and creditor of the company who may join in the suit and contribute to its expense, to set aside as invalid a mortgage given by the company, dated March 19, 1866, covering its railroad, franchises and property, existing and future, to Robert H. Berdell, Dudley S. Gregory, and John C. Bancroft Davis, as trustees, to secure the payment of an issue of bonds of the company to the amount of $20,000,000. The defendants are that company and its assignees in bankruptcy; the New York and New England Railroad Company, which is in possession of and operating the railroad; certain persons now living, and the personal representatives of others now deceased, who have, at different times, acted as trustees under the mortgage; the treasurer and receiver general of the Commonwealth of Massachusetts; George Ellis, Frederick A. Lane, and William C. Eayrs.

Afterwards Amelia T. Raymond, a holder of 100 shares, and two other shareholders, were admitted as co-plaintiffs. Four separate demurrers to the bill were filed, one of them being by the assignees in bankruptcy, and another by the New York and New England Railroad Company. They set forth, as grounds of demurrer, among other things, want of equity and laches. The case was heard on the demurrers, and in January, 1883, a decision was rendered, 14 Fed. Rep., 753, dismissing the bill, on which a decree to that effect was entered, from which Graham and Raymond have appealed.

The mortgage covered all the property of the company in Massachusetts, Rhode Island, Connecticut, and New York. In December, 1865, there remained to be built, of the projected

line of the road, 74 miles between Waterbury, Connecticut, and Fishkill, New York, and 26 miles in Connecticut, between Willimantic and Mechanicsville. The aggregate amount of liens, at that time, on the property and franchises owned or leased by the company, and which were prior liens to the $20,000,000 mortgage, (which will be called the Berdell mortgage,) was $9,904,650. The object of making the Berdell mortgage was to retire this prior lien debt and complete and equip the road, from Boston to Fishkill.

In January, 1870, default was made in paying the six months' interest which then fell due on the mortgage. Soon thereafter, the company's property was taken on legal process in several suits.

In July, 1870, George Ellis and two other persons filed a bill in equity, in the Supreme Judicial Court of Massachusetts, to foreclose the mortgage. Receivers were appointed, who took possession of the road August 2, 1870.

In October, 1870, an involuntary petition in bankruptcy was filed against the company, in the District Court of the United States for the District of Massachusetts, on which an adjudication was made March 2, 1871. Assignees were appointed, who, after the foreclosure was perfected, released to the trustees under the mortgage all the rights of the company in the mortgaged property.

On the 9th of May, 1871, a decree was made in the Ellis suit, providing for the delivery of the mortgaged property by the receivers to the trustees; for the filing by the latter, in the office of the Secretaries of State of Massachusetts, Rhode Island, Connecticut, and New York, of a notice that they had taken possession of the property for default in the payment of interest on the bonds, " and with their purpose " to foreclose the mortgage for such default ; and for the vesting of the property absolutely and in fee in the trustees, if default in the performance of the condition of the mortgage should continue for eighteen months after the notice should be filed, in which case all equity of redemption of the mortgagor should be barred.

In September, 1871, the trustees entered and took possession for foreclosure and filed the notices so provided for. The no-

tices were of the character mentioned in the mortgage, which provided that, if a default in paying principal or interest should continue for eighteen months after the filing of the notices, the property should vest in fee in the trustees, without further process of law, and all equity of redemption of the mortgagor should be barred.

The foreclosure having been perfected, the trustees, pursuant to a decree made in June, 1875, in the Ellis suit, conveyed the mortgaged premises and franchises to the New York and New England Railroad Company, a corporation organized by the former bondholders, and delivered to it the property.

The first ground alleged in the bill for declaring the mortgage invalid is, that it was authorized and made at a meeting of the shareholders of the company held in the city of New York; that it was not a corporation of New York, but was a corporation of Connecticut, Massachusetts, and Rhode Island; and that, therefore, the meeting was illegal and the mortgage void. The Circuit Court held that the corporation was a New York corporation; that the meeting was lawfully held; and that its proceedings were valid and binding on the company.

In the mortgage the company is described as " a corporation existing under the laws of the States of New York, Connecticut, Rhode Island, and Massachusetts." The mortgage recites that " the shareholders of the Boston, Hartford and Erie railroad Company, at a meeting duly and lawfully called and held at the city of New York, on the fourteenth day of March, A.D. 1866, voted to authorize the directors to make application to the several legislatures of the States in which the chartered rights of the road exist, for authority to make a mortgage upon the whole or any portion of the line of the road, and to create, issue, and dispose of, at the best rates that can be obtained, their convertible bonds, payable in the city of New York, on the first day of July, A.D. 1900, for one thousand dollars each, not to exceed the amount of twenty millions of dollars in all;" with authority to the directors to make a portion of the bonds payable in London, " interest payable semi-annually on the first days of January and July in each year, at the rate of seven per cent. per annum, interest and principal to be

payable at such places in the city of New York or in London as the directors may authorize; and the particular form of bonds, interest warrants thereon, and mortgage, to be left entirely at the discretion of the board of directors; the said bonds to be issued for the purpose of providing for and retiring all the existing mortgage debt and prior liens upon the line of the road of the party of the first part, and for the purpose of completing and equipping their road;" that "the said board of directors, at a meeting duly convened and held in the city of New York, on the nineteenth day of March, 1866, voted to authorize the creation and issue of the first-mortgage bonds of said company, in the following form" (a form of a bond is here inserted); and that "the said directors, at their said meeting, further voted to empower bonds of said form . . . hereafter to be issued, and to be secured under the mortgage, . . . but not in a greater principal sum than twenty millions of dollars in all; . . . and further, at the same time, voted to secure the entire issue of said bonds by the execution of a mortgage in the form of these presents." It then conveys to the trustees named the railroad of the company, commencing at the foot of Summer street, in Boston, and thence extending through the States of Massachusetts, Connecticut, Rhode Island, and New York, to the western terminus of its location on the east bank of the Hudson River, at Fishkill, together with all the privileges, franchises, and property then owned or thereafter to be acquired by the company.

On the 25th of April, 1864, an act had been passed by the Legislature of New York, Laws of New York, 1864, ch. 385, p. 884, entitled "An Act to consolidate the Boston, Hartford and Erie, the Boston, Hartford and Erie Extension, and the Boston, Hartford and Erie Ferry Extension Railroad Companies." It provided as follows: "The Boston, Hartford and Erie Extension Railroad Company, and the Boston, Hartford and Erie Ferry Extension Railroad Company, may both, or either, sell and convey to the Boston, Hartford and Erie Railroad Company the franchise and property of said several corporations, upon such terms as may be mutually agreed upon; and whenever certificates, under oath, of said Boston, Hartford and Erie

Railroad Company, and a like certificate, under oath, of the other contracting corporation, shall be lodged in the office of the Secretary of State, showing such sale and conveyance, and containing a full description of the rights and property conveyed, then, and in such case, such sale and conveyance shall be effectual in law to pass title to the franchise and property sold, conveyed, and described in such certificate, without other or further registry of the instrument of conveyance. And on the leaving of such certificate as above provided, the Secretary of State shall file and record the same, and said Boston, Hartford and Erie Railroad Company shall become possessed of the rights of charter and property sold, conveyed, and described in said certificates, and may have, hold, and use the same in their own name and right, as a portion of their railway line and property, and have all the rights the corporation making sale and conveyance had at the time of such conveyance, to construct and operate a railway within the terminal points designated in the charter of the company making the conveyance, and subject to the laws of this State, passed, or that may be passed, concerning railroad corporations."

This act professes, in its title, to be an act to consolidate the three companies. It authorizes the sale to the Boston, Hartford and Erie Company of the franchises and property of the other two corporations, (which were New York corporations,) and provides that such sale shall pass the title to such franchises and property, and that the purchasing company shall thereby "become possessed of the rights of charter and property sold," and thereafter have, hold, and use the same in its "own name and right."

As a purchaser of what this act authorized to be sold to it, the company purchasing became a New York corporation, by its then existing name. The case is directly within the ruling of this court in *Clark* v. *Barnard*, 108 U. S. 436, 448. There this same company had, as a Connecticut corporation, purchased the franchises and railroad of the Hartford, Providence and Fishkill Railroad Company, a consolidated corporation under the laws of Connecticut and Rhode Island. Afterwards the Legislature of Rhode Island ratified the sale, so far as the rail-

road was situated in Rhode Island, by an act which proceeded to declare that the "said Boston, Hartford and Erie Railroad Company, by that name, shall and may have, use, exercise, and enjoy all the rights, privileges, and powers heretofore granted and belonging to said Hartford, Providence and Fish-kill·Railroad Company, and be subject to all the duties and liabilities imposed upon the same by its charter and the general laws of this State." On this state of facts, this court said: "The Hartford, Providence and Fishkill Railroad Company was, without question, so far as it owned and operated a railroad within the State of Rhode Island, a corporation in and of that State; and the Boston, Hartford and Erie Railroad Company became its legal successor in that State, as owner of its property, and exercising its franchises therein, and became, therefore, in respect to its railroad in Rhode Island, a corporation in and of that State;" and the case of *Railroad Co.* v. *Harris*, 12 Wall. 65, 82, and other cases in this court, were cited to the effect that one State may make a corporation of another State, as there organized and conducted, a corporation of its own, *quoad* any property within its territorial juris-. diction.

That this statute of New York was acted upon and availed of by the Boston, Hartford and Erie Company sufficiently appears from the bill. It is not pretended there was any other charter to the company from the State of New York, when the mortgage was made. The ratification of the mortgage by the Legislature of New York, hereafter mentioned; the recording of the mortgage and of the resignations and appointments of trustees, in counties in New York; and the recognition, by a statute of New York, passed May 21, 1873, Laws of New York, 1873, ch. 550, p. 861, of the New York and New England Company as the successor, as a corporation, through the mortgage, of the mortgagor company, sufficiently show that the New York interest came through the New York act of April 25, 1864. See, also, *In re Boston, Hartford and Erie R. R. Co.*, 9 Blatchford, 409, 415.

That a meeting in one of several States of the stockholders of a corporation chartered by all those States is valid in re-

spect to the property of the corporation in all of them, without the necessity of a repetition of the meeting in any other of those States, is, we think, a sound proposition. Whether it be or be not true that proceedings of persons professing to act as corporators, when assembled without the bounds of the sovereignty granting the charter, are void, *Miller* v. *Ewer*, 27 Maine, 509, there is no principle which requires that the corporators of this consolidated corporation should meet in more than one of the States in which it has a domicil, in order to the validity of a corporate act.

It appears by the bill that the mortgagor corporation was chartered by its name, by the Legislature of Connecticut, at its May session, 1863 ; that thereafter acts were passed by the Legislatures of Massachusetts and Rhode Island, making it a corporation of those States ; that, in August, 1863, the Southern Midland Railroad Company, having previously acquired all the franchises and property of the Boston and New York Central Railroad Company, a corporation chartered under the laws of Massachusetts, Connecticut, and New York, conveyed all its franchises and property to the Boston, Hartford and Erie Company ; and that, in November, 1863, the latter company, under authority contained in acts of the legislatures of all four of the States, acquired the franchises and property of the Hartford, Providence and Fishkill Railroad Company, a corporation created under the laws of New York, Rhode Island, and Connecticut.

The Boston, Hartford and Erie Company, therefore, though made up of distinct corporations, chartered by the legislatures of different States, had a capital stock which was a unit, and only one set of shareholders, who had an interest, by virtue of their ownership of shares of such stock, in all of its property everywhere. In its organization and action, and the practical management of its property, it was one corporation, having one board of directors, though, in its relations to any State, it was a separate corporation, governed by the laws of that State as to its property therein. It, therefore, had a domicil in each State, and the corporators or shareholders could, in the absence of any statutory provision to the contrary, hold meet-

ings and transact corporate business in any one State, so as to bind the corporation in respect to its property everywhere. *Bridge Co.* v. *Mayer*, 31 Ohio St. 317 ; Pierce on Railroads, 20.

In addition to this, the Legislatures of Rhode Island, New York, Massachusetts and Connecticut, by acts passed after the mortgage was made, expressly ratified and confirmed the proceedings of the company in making it, each act being substantially in these words : " The proceedings of the Boston, Hartford and Erie Railroad Company, whereby, by indenture dated March nineteenth, eighteen hundred and sixty-six, they conveyed their railroad and property in mortgage to Robert H. Berdell, Dudley S. Gregory, and John C. Bancroft Davis, trustees of the bondholders in said mortgage mentioned, to secure the holders of said bonds the payment of the same, are hereby ratified and confirmed." Private Acts of Rhode Island, January Session, 1866, p. 294; Laws of New York, 1866, ch. 789 ; Laws of Massachusetts, 1866, ch. 142 ; Private Acts of Connecticut, May Session, 1866, p. 169. These acts ratified " the proceedings " of the company whereby the mortgage was made. As the mortgage states, on its face, that the meeting of the shareholders at which they voted to authorize the directors to apply for legislative authority to make the mortgage was " duly and lawfully called and held at the city of New York," the holding of the meeting there was ratified as a part of the proceedings.

The irregularity, if any, was one which the legislatures of the four States could rectify, as they did, because all of them, acting together for the one purpose, could have authorized in advance the holding of the meeting at New York. *Grenada Co.* v. *Brogden*, 112 U. S. 261 ; *Anderson* v. *Santa Anna*, 116 U. S. 356 ; *Shaw* v. *Norfolk R. R. Co.*, 5 Gray, 162 ; *Howe* v. *Freeman*, 14 Gray, 566.

It is urged by the appellants, that it appears from the mortgage, that the vote at the meeting was merely one to authorize the directors to apply to the several legislatures for authority to make a mortgage; that five days after the vote the mortgage was executed ; that the shareholders never voted to authorize the making of a mortgage ; and that, therefore,

the mortgage was invalid.   The sufficient answer to this contention is, that the terms of the vote, as recited in the mortgage, are adequate to confer authority on the directors, acting for the company, to make the mortgage, after the legislatures should have granted authority to make it; and that the subsequent ratification by the legislatures is equivalent to previous authority.   The terms of the mortgage are specified in detail in the vote, the mortgage conforms to them, and the vote is to be construed as covering authority from the shareholders to make the mortgage, if legislative authority should be given.   It sufficiently appears that the four confirmatory acts were passed before the mortgage was recorded anywhere, and before any bonds secured by it were issued.

Moreover, the mortgage has been ratified by acts of the legislatures of the four States confirming the organization of the New York and New England Railroad Company, as successor, through the mortgage, of the Boston, Hartford and Erie Company.   The acts of Massachusetts and Connecticut are substantially in these terms: " The proceedings of the holders of the bonds secured by mortgage, dated March nineteen, eighteen hundred and sixty-six, from the Boston, Hartford and Erie Railroad Company to Robert H. Berdell and others, whereby they have formed a corporation under the name of the New York and New England Railroad Company, are ratified and confirmed."   Laws of Massachusetts, 1873, ch. 289 ; Special Acts of Connecticut, May Session, 1873, p. 8.   The act of Rhode Island is in these terms: " The New York and New England Railroad Company, being a corporation formed under the provisions of a mortgage made by the Boston, Hartford and Erie Railroad Company to Robert H. Berdell and others, trustees, and ratified and confirmed by the General Assembly at the January session, 1866, is hereby recognized and declared to be a corporation invested with all the powers, privileges and franchises, and subject to all the duties, liabilities and restrictions of said Boston, Hartford and Erie Railroad Company, as is provided in said mortgage, and the proceedings of the holders of the bonds secured by said mortgage, whereby they have formed said corporation, are hereby ratified and confirmed."   Private

Acts of Rhode Island, May Session 1873, p. 13.    The act of New York extends for two years the time for the completion of the Boston, Hartford and Erie Railroad, and then says: "The benefit of this extension of time shall vest in the New York and New England Railroad Company, a corporation formed under the provisions of the mortgage ratified and confirmed by chapter seven hundred and eighty-nine of the laws of eighteen hundred and sixty-six."    Laws of New York, 1873, ch. 550.

It is also contended by the appellants, that the mortgage was void for fraud.   The bill contains these allegations : "And your orator is informed and believes, and therefore avers, that said meeting was held in the State of New York, beyond the States in which said corporation was created, so that as few stockholders as possible, because of the distance from their homes, might attend said meeting, in order that the stockholders present, representing or acting in the interest of the Erie Railway, might, by authorizing a mortgage of its franchises, raise a large sum of money, a portion of which should afterwards be diverted to the use of said Erie Railway ; which was done, as is hereinafter fully set forth, to the extent of five millions of dollars.    And your orator claims that by reason of the meeting being so held for the purposes aforesaid, and in the place aforesaid, said meeting was illegal, and all its acts and doings were null and void."    "And your orator, upon information and belief, further avers, that on or about October in the year 1867, said Eldridge, then being the president of the Boston, Hartford and Erie Railroad, and also president of the Erie Railway, and while said Davis and Gregory were trustees as aforesaid, and said Davis being the legal counsel and adviser of said Erie Railway, said parties colluded and agreed together as such trustees, and the president of said Boston, Hartford and Erie Railroad, and as well of the Erie Railway, of which the majority of said trustees were counsel and president, and sold five millions of said bonds at a discount of twenty per cent., receiving therefor the promises to pay at future dates, the exact dates of which your orator is ignorant, but which will appear upon the books of said railroad, which were afterwards discounted at great loss

and cost to said Boston, Hartford and Erie Railroad, in order to convert the same into cash, and the money obtained thereon was not used in equipping and finishing said road, nor in taking up the underlying liens on said road, but was used in paying the losses that said officers of said Boston, Hartford and Erie Railroad had made in speculations in stocks in the name of said road. And your orator, upon information and belief, further avers, that said Erie Railway guaranteed the payment of the interest on the $5,000,000 of Berdell bonds, and sold and disposed of the same in buying certain property for said Erie Railway at ninety cents on the dollar for said bonds; and that this whole transaction was made for the benefit of said Erie Railway, in accordance with a contract made between the officers of the two roads, the said officers that made and concluded said transactions and contract being substantially one and the same persons."

The substance of these allegations is, that the persons who acted in the interest of the Erie Railway Company intended, by means of the mortgage, to raise money which should be diverted to the use of that company. But it is not alleged that the price of 80 per cent. was not the full value of the $5,000,000 of bonds; and the guarantee by the Erie Railway Company of the payment of the interest on those bonds, may very well have enhanced their value by 10 per cent. The diversion of the proceeds of the 80 per cent. by the officers of the Boston, Hartford and Erie Company, to pay for losses by them in speculations in stocks, is something which, as regards that company, and its rights, which alone the appellants are seeking to enforce, cannot affect the rights of the ultimate purchasers of the $5,000,000 of bonds, represented now by the New York and New England Company.

Of the $20,000,000 of bonds, the $7,404,650 used in retiring underlying mortgage bonds, and the $275,350 used in completing or equipping the road, being, in all, $7,680,000, were clearly valid. As to the $2,500,000 of bonds, which were, by the terms of the mortgage, to be applied to the retirement of underlying liens, and were apparently issued to the State of Massachusetts in exchange for a loan of its scrip, that State, taking the bonds

with notice of the diversion, might have been liable, as a constructive trustee, to the holders of such underlying liens, for the proper application of the bonds, but certainly owned them as against all the world but such *cestuis que trust;* and it would seem that the proceeds of the bonds were used in completing and equipping the road. As to the $4,819,000 alleged to have been stolen by Eldridge, there is nothing to show that they had not come to be held by *bona fide* holders.

. Some of the bonds being valid, the mortgage was valid as to them, though there may have been some invalid bonds. In the Ellis foreclosure suit, the fact that some of the bonds may have been invalid, was of no importance unless and until the mortgagor offered to redeem the valid bonds. The holders of the invalid bonds could not share in the benefits of the foreclosure, and the holders of the valid bonds would see that that rule was observed in the foreclosure suit. The agreement of facts on which the Ellis suit was heard states that all of the 20,000 bonds but one were issued, and that the same were, at that time, "wholly or in great part owned by *bona fide* holders thereof."

It is contended by the appellants, that they were not parties to the Ellis foreclosure suit; that it was a collusive suit, without any real controversy; that it is still pending; and that the proceedings and decree in it are not binding on the appellants.

There are provisions in the Berdell mortgage, that, in case of default by the company in the payment of either principal or interest of the bonds, the company shall deliver possession of the mortgaged premises to the trustees; that, on taking possession, the trustees shall file in the office of the Secretaries of State of the States of Massachusetts, Rhode Island, Connecticut, and New York, a written notice that they have taken possession of the mortgaged property, franchises, and estate, for default in the payment of principal or interest, or both, as the same may be, and of their purpose to foreclose the mortgage for the default; that, if the default shall continue for eighteen months after such notice shall be filed, the whole of the mortgaged premises and franchises shall vest absolutely and in fee in the trustees, and all the right or equity of redemp-

tion of the company therein shall be forever barred and fore-closed; that, in case of an absolute foreclosure, it shall be the duty of the trustees to call a meeting of the bondholders, by an advertisement of the time and place and object thereof, in newspapers published in Boston, Providence, Hartford, New York City, and London, at which meeting the bondholders may organize themselves into a corporation, with a corporate name to be selected by them, and a capital stock equal to such outstanding mortgage debt, which new corporation shall have all the powers, privileges, and franchises, and be subject to all the duties, liabilities, and restrictions of the old company, and shall consist of the holders of the mortgage bonds, at a pre-scribed rate; and that the trustees shall convey to the new corporation all the mortgaged property and franchises. The mortgage also contains provisions for the filling of vacancies in case of the death, resignation, or removal of any of the trus-tees, and for the vesting of all the mortgaged property in the persons so appointed.

The following facts appear from the bill in this suit, and from a copy of proceedings in the Ellis suit, made a part of it: On the 15th of July, 1870, George Ellis and others filed their bill of complaint in the Supreme Judicial Court of Massachu-setts, sitting in equity, in behalf of themselves and all other holders of the mortgage bonds, representing that they were the owners of forty-seven of the bonds, and of the interest warrants thereon which had matured on the first days of Jan-uary and July of that year and were unpaid, and praying for the appointment of a receiver and for the foreclosure of the mortgage. On the 2d of August, 1870, an order was entered in the cause appointing receivers and directing them to take possession of the road and property. On the 9th of May, 1871, a decree was entered in the cause, in which, after reciting that the court, on the 24th of April, 1871, had decided and decreed that Moses Kimball, Thomas Talbot, and Avery Plumer were, in law, the present trustees under the mortgage, it was ad-judged and decreed by the court, that the receivers deliver into the possession and control of these trustees, or their suc-cessors in office, all the roads, railways, property, and fran-

chises which they had in their hands and possession, or under their management and control, as such receivers; that the trustees, or their successors in office, upon taking possession of the property, should file in the office of the Secretaries of State of the four States the notice authorized by the mortgage; and that, if default in the performance of the condition of the mortgage should continue for the space of eighteen months after the filing of such notice, the mortgaged premises and franchises should vest absolutely and in fee in the trustees and their successors, and all right or equity of redemption of the company therein should be forever barred and foreclosed. By a decree entered July 28, 1871, William T. Hart, George T. Oliphant, and Charles P. Clark were declared by the court to be, by valid succession and appointment, trustees in place of Kimball, Talbot, and Plumer, who had resigned, and their successors in the trusts. Under these decrees the trustees entered into possession of the mortgaged property, and on the 16th of September, 1871, filed in the offices of the Secretaries of State of the four States the notices of foreclosure, and, the default still continuing, maintained their possession for a period of more than eighteen months thereafter. On the 18th of March, 1873, they called a meeting of the bondholders, as authorized in the mortgage, for the purpose of organizing themselves into a corporation. At this meeting, held in Boston, on the 17th of April, 1873, a corporation was formed, under the name of the New York and New England Railroad Company. By the before-mentioned acts of the legislatures of the several States, the proceedings of the meeting were ratified and confirmed; and the new corporation has since been in possession of the road and franchises, under a conveyance from the trustees, so authorized. The bill contains an averment that the Ellis suit has never proceeded to a final determination and decree, and is still pending in court.

There is, in the bill, an alternative prayer, that, if the court shall not decree the mortgage to be invalid, it will establish and confirm the trusts under it, and remove the persons now administering the trusts, and appoint new trustees to take possession of the mortgaged property, and hold it, under the direc-

tion of the court, for the benefit of the creditors and stock-holders; and that an account be taken of the earnings of the road.

On the foregoing statement of the case the Circuit Court said, in its decision: "The case thus presented shows that prior to the filing of this bill, under a decree of a court of equity having jurisdiction of the parties and of the subject-matter, the mortgage had been completely foreclosed. To avoid the effect of the foreclosure, the bill charges that the Ellis suit was the result of a fraudulent conspiracy on the part of Ellis, the plaintiff, Lane, the president of the company, who represented it in its defence, and the receivers and trustees appointed by the court, entered into for the purpose of embarrassing the company and depriving it of its road and property; and that this fraud was perpetrated by submitting to the court false statements of facts for its decision, and thus obtaining a decree against the company. The bill does not allege in what particulars the statements of fact were false; nor does it allege that there was not a breach of the condition of the mortgage, nor that the plaintiffs were not the actual holders of the bonds and unpaid interest warrants, nor that any part of the interest which has accrued since 1869 has ever been paid; nor is there any offer or suggestion for redeeming the mortgage. There is no allegation that the new corporation, or any considerable number of the bondholders, had any knowledge of the alleged fraud. The obvious inquiry arises, at this stage of the case, why the plaintiff has not brought to the attention of the State Court the fraud alleged to have been practiced upon it, and there sought to have the foreclosure decree revoked." "In *Nougué* v. *Clapp*, 101 U. S. 551, it was held that a Circuit Court of the United States cannot revise or set aside a final decree rendered by a State Court, which had complete jurisdiction of the parties and subject-matter, upon the ground that the decree was obtained by fraud, where the injured party has had an opportunity to apply to the State Court to reverse the decree. The plaintiff is a party to the foreclosure suit, as a shareholder in the old corporation. The State Court is still open to listen to the complaint of the corporation

and its shareholders. The decree of foreclosure, though final in one sense, as determining the respective rights of the parties to the property in question, is still in its nature interlocutory, and is open to review by the court, upon petition or motion in the cause, or by bill of review for good cause shown. Story Eq. Pl., § 421, and note; *Evans* v. *Bacon*, 99 Mass. 213; Mass. P. S., ch. 151, § 12. The plaintiff has, therefore, an ample and complete remedy, for all his alleged grievances, in the State Court, and there is no occasion for his application to this court for relief by bill in equity. The decree of foreclosure, therefore, now in full force and unrevoked, is a bar to this suit." These views, so well expressed, are conclusive of this branch of the case, and require nothing more to be said.

The mortgage being a valid mortgage, even if some of the bonds issued under it were invalid, and the right of redemption having passed to the assignees in bankruptcy, and been released by them to the New York and New England Company, and a demurrer having pointed that out, the bill was amended so as to allege that the bankruptcy proceedings were void for fraud. It is claimed that those proceedings were a part of the conspiracy of Ellis and Lane and others, to which Adams, the petitioning creditor in bankruptcy, became a party, to wreck the road; and that the petitioning creditor's debt was insufficient to give the bankruptcy court jurisdiction.

The Circuit Court, as to these matters, correctly held these propositions: An adjudication of bankruptcy, made by a District Court having jurisdiction of the bankrupt, cannot be impeached collaterally by any person who was a party to the bankruptcy proceedings. Until vacated in the manner prescribed by the bankruptcy act, it is binding upon all the parties to it. The District Court is always open for a re-examination of its decrees in an appropriate form. Any order made in the case may be set aside and vacated on proper showing made, due regard being had to rights which have become vested under it and will be disturbed by its revocation. The only remedy provided for the correction of errors made by the District Court is to be found in the supervisory jurisdiction of the Circuit Court, under the statute, which is exclusive, and not

reviewable in this court. In *Lamp Chimney Co.* v. *Brass & Copper Co.*, 91 U. S. 656, it was held, that a decree adjudging a corporation bankrupt is in the nature of a decree *in rem*, as respects the *status* of the corporation; and that, if the court rendering it has jurisdiction, it can only be assailed by a direct proceeding in a competent court, unless it appears that the decree is void in form, or that due notice of the petition was never given. No such defect appears in these proceedings. The District Court had jurisdiction to make the decree, and it has never been vacated. The plaintiff, and all the shareholders whom he represents, form an integral part of the corporation, and as such were parties to the bankruptcy proceedings. He is, therefore, bound by the decree, and cannot impeach it collaterally in this suit.

On the subject of laches, the Circuit Court said: "This bill was filed fourteen years after the making of the mortgage, ten years after the commencement of the bankruptcy proceedings, nine years after the entry of the foreclosure decree in the Ellis suit, and seven years after the foreclosure became absolute and the road was conveyed to the new corporation by the trustees. During all this time the records of the courts upon which appear all the proceedings by which the alleged fraud is claimed to have been consummated have been open to inspection and examination, and what has been done under them might have been known to the plaintiff, if he had seen fit to make inquiry. In the meantime, it is apparent that many persons must have acquired rights in the stock of the new corporation, who were ignorant of the alleged frauds. Under such circumstances, to set aside this mortgage, to disregard the decree of foreclosure and the adjudication in bankruptcy, and to take the road out of the hands of the bondholders, who have received no interest on their bonds since 1869, and to place it in the hands of receivers for the benefit of the shareholders in the old corporation, is a proposition so wild and preposterous as hardly to merit serious consideration." We concur fully in these views.

The grounds for dismissing the bill being adequate, we do not deem it necessary to say anything as to the frame of the bill, within the settled rules of equity jurisprudence, in a case

where a stockholder in a corporation seeks to enforce, in equity, a right of the corporation.   Much might be said as to the defects of this bill, and we only allude to the point, lest it might· be inferred we regard the bill as properly framed, under those rules.                                      *Decree affirmed.*

MR. JUSTICE GRAY took no part in the decision of this case.