70 F.2d 628 (1934)
In re ABESBAUM.
IRVING TRUST CO.
v.
ABESBAUM.
No. 398.
Circuit Court of Appeals, Second Circuit.
April 30, 1934.
Benjamin Siegel, of New York City (Benjamin Siegel and Edward I. Kaplan, both of New York City, of counsel), for Irving Trust Company, Trustee in Bankruptcy.
Archibald Palmer, of New York City (Sydney Basil Levy and Harry D. Glicksman, both of New York City, of counsel), for bankrupt appellee.
Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.
AUGUSTUS N. HAND, Circuit Judge.
A petition in bankruptcy was filed against Hyman Abesbaum on November 17, 1932, and on January 13, 1933, an order was made by the District Court directing Abesbaum to turn over $12,000 to Irving Trust Company as receiver within five days after service upon him of the order. Upon his failure to comply with this order, a motion was made by the receiver to have him adjudged in contempt, and on February 28, 1933, he was adjudged in contempt and ordered committed to the New York county jail until such time as he should have purged himself thereof. On May 4, 1933, by virtue of this order, he was committed to prison. Thereafter he made two applications to obtain release from imprisonment, one of which was denied on July 12, 1933, and the other on August 22, 1933. After the denial of the second application, he offered to pay $5,000 to the estate to purge himself of his contempt, but the amount of the offer was unsatisfactory to the trustee in bankruptcy.
On November 16, 1933, he made a further and third application for discharge on the ground that he had been in prison for more than six months, that he could not comply with the order and had demonstrated his inability by his long confinement. This application was granted, and, from the order granting it, this appeal has been taken.
We have before us what may almost be called the "conventional" tactics of a fraudulent bankrupt. Substantially on the eve of bankruptcy, Abesbaum withdrew $12,000 in cash from his business; $3,000 on November 3, 1932; $3,000 on November 9, 1932; and $6,000 on November 11, 1932. He explained the first $3,000 by saying it was handed over to his brother-in-law in payment of loans as to which he produced no written evidence and had no entries in his books and could give no dates. He said he lost $6,000 when drunk and gambling with cards and dice. The final $3,000 he testified he gave to his wife on account of a $5,000 indebtedness to her. The District Judge credited none of these explanations and made the original "turnover" order because they all seemed illusory.
The stories of bankrupts who conceal assets have assumed a form almost as conventional as the plots one finds in the plays of Plautus and Terence. Indeed, if they were told with art and possessed more fertility of imagination, a new anthology might be gathered for American literature from the bankruptcy field. As it is, they contain little more than standardized forms of falsehood so often *629 reiterated as to be neither credible nor interesting.
In nearly every case of concealed assets a bankrupt finally has to face a dilemma. By his acts or procurement, assets have been withdrawn from his creditors. But if he admits this, he becomes by his own confession a violator of the criminal law, either for withholding property from his trustee or for embezzling what he at first withheld. Accordingly circumstances impel him to invent absurd explanations for his abstractions and to stick to these explanations because he has not an imagination good enough to concoct a really plausible story, and a disclosure of the real facts would involve him in personal peril. Here we cannot tell whether the moneys that Abesbaum once concealed have not since been dissipated in living or legal expenses, or whether they are still within his control. Under the circumstances, the District Judge was quite right in not confining him longer except to the extent that he might compel the payment of $5,000 which he had once offered to turn over and which he did not show that he could not still disgorge. We should without hesitation affirm the order of the District Court were it not that he once offered to pay this sum to the trustee if it would consent to his release.
It cannot be disputed that the bankrupt had control over $12,000 of concealed assets at the time when the order directing him to pay that amount was made. Oriel v. Russell, 278 U. S. 358, 49 S. Ct. 173, 73 L. Ed. 419. The only question remaining open is whether he still is able to control the disposition of any part of the moneys he was ordered to restore to the trustee of his estate. While it goes without saying that a contempt order cannot be used to compel the bankrupt to borrow money to replace assets which he has concealed and squandered since bankruptcy proceedings were instituted, in the absence of anything to the contrary we have a right to assume on the present record: (1) That the $5,000 which the bankrupt offered to pay after the denial of his second application for relief was a part of the fund with which he was charged by the turnover order, In re J. H. Small Shoe Co. (C. C. A.) 16 F.(2d) 205; and (2) that he has not converted it since the offer was made.
We hold that to the extent of $5,000 the bankrupt still has moneys under his control which he ought to pay to the trustee, and direct that the order appealed from purging him from contempt and releasing him from imprisonment be reversed unless within five days after the entry of the order upon the mandate of this court the bankrupt shall restore $5,000 to Irving Trust Company as trustee in bankruptcy, and, in the event of the payment to the trustee within said period, be affirmed.
Order modified.