## KATTELMAN v. MADDEN.

### No. 10738.

Circuit Court of Appeals, Eighth Circuit.

March 6, 1937.

Rehearing Denied March 26, 1937.

Patrick H. Cullen, of St. Louis, Mo. (Clem F. Storckman, Cullen Coil, W. W. Henderson, and Harry Troll, all of St. Louis, Mo., on the brief), for appellant.

Harry C. Barker, of St. Louis, Mo., for appellee.

Before GARDNER, THOMAS, and FARIS, Circuit Judges.

FARIS, Circuit Judge.

Appellant was heretofore, and on the 16th day of September, 1935, adjudicated by default an involuntary bankrupt upon the petition of three creditors. The petition in involuntary bankruptcy was filed on the 18th day of July, 1935. Pending a hearing thereon and on July 19, 1935, one William S. Madden was appointed receiver of the estate of the alleged bankrupt (see section 11, cl. 3, title 11 U.S.C.A.) to take·possession of and hold all assets thereof till a trustee should be elected. This order appointing a temporary receiver is fair upon its face and sets out that such appointment of a receiver is absolutely necessary. Prior to the appointment of such receiver, no notice thereof was given to appellant, but four days after such appointment appellant filed a motion to vacate the order making it, and the record discloses that his motion to vacate was "heard, argued, submitted and overruled." And no appeal was taken by appellant.

Thereafter, and on August 17, 1935, the receiver, appellee herein, filed a petition in the District Court, which inter alia averred that appellant had failed, neglected, and refused to turn over to appellee and had hidden and concealed the assets, books, and papers of the alleged bankrupt, in contempt of the terms of the order appointing appellee as receiver, that the receiver could not certainly and definitely describe the kind and amount of the property and assets withheld, in effect, because appellant had withheld all the books and papers of the estate, but that as of November 15, 1934, appellant had cash and securities of the value of $102,-621.23, accounts receivable, $850,631,97,

real estate $137,000, and other assets, namely collateral of customers $858,540.17, and praying that an order be entered directed to the defendant, the alleged bankrupt, "requiring him to appear and show cause why he should not be punished as for a contempt of the court, and that on a proper hearing he be punished as for a contempt of the court, its orders and processes in accordance with law."

An order to show cause was thereupon issued, directed to appellant requiring him to appear before the court on September 11, 1935, and show cause why he should not be punished for contempt, for his alleged failure to comply with the order of court made July 19, 1935 (the order appointing appellee as receiver), which ordered and directed appellant to turn over to the receiver, "all of his property, assets and effects, real and personal, and all choses in action, and all books, records, ledgers, papers, documents, correspondence, memoranda, bank statements," and other papers, not relevant or presently involved herein.

Appellant on the return day, to wit, September 11, 1935, filed a formal return to the order to show cause, in which he denied generally every allegation in the petition of the receiver for the order to show cause; averred that the order of July 19, 1935, was not an order adjudicating or determining what property, if any, was in the possession of appellant, and that no order adjudicating such fact has ever been made; that the order of July 19, 1935, is void and not binding on him, because it was made without notice; that said order was made without any issue having been framed before the court, for the purpose of determining what property he had ever had in his possession and what property he was under obligation to turn over.

Upon the issues thus made by the application of the receiver, and the allegation therein that appellant had "hidden and concealed and had failed and omitted" to turn over to the receiver his assets real and personal and his books and papers, and appellant's general denial, and plea to the power and jurisdiction of the court, the matter came on for hearing on the 11th day of September, 1935. Appellant appeared in person and by counsel, and the hearing began and continued for three days. At its conclusion arguments of counsel were heard and briefs

were filed, and the court took time to consider. On November 23, 1935, the court made findings of fact, and a conclusion of law. In these findings of fact, the court set out in detail item by item, the property and assets, books and papers, which he found the appellant had hidden and concealed and failed and omitted to turn over to the receiver. Among these items was the sum of $39,205 in cash, two shares of corporate stock, and a Liberty bond, which, with other items set out in detail (in the schedule made a part of the court's order), the court found that appellant "on the 19th day of July, 1935, and thereafter had, and now has in his possession and under his control." (Then followed, as said, a schedule or list in minute detail of such property and cash.)

Bearing upon appellant's recalcitrancy in refusing and failing to turn over his property to the receiver, the court also found:

"That prior to June 29, 1935, the Federal Securities and Exchange Commission examined into the affairs of the alleged bankrupt, which he claims caused him to close his establishment on said June 29th; that when the receiver herein on said July 19th took possession of the alleged bankrupt's offices on the second floor of the office building located at 705 Olive Street, Saint Louis, Missouri, they were stripped of all assets and records, excepting office furniture and equipment, including empty safes and files; that the defendant's safe deposit boxes were also empty and his checking and brokerage accounts had been reduced shortly prior to said June 29th from large to small balances; that at the times of the various hearings herein mentioned the whereabouts of his numerous salesmen were unknown and his other employes were then for several weeks away on vacations; that the receiver directly and through his counsel promptly and frequently demanded of defendant that he turn over all of his assets and records to the receiver and portions thereof were gradually but reluctantly so turned over; that finally, and on or about August 7th, 1935, receiver's counsel by mutual agreement and understanding with defendant, gave defendant until August 12th, 1935, to turn over to the receiver all of the remainder of his assets and records; that the defendant requested such time for further consultations with counsel and on said last men-

tioned day certain other records were delivered to the receiver, even though theretofore the defendant had asserted to the receiver and his counsel that he had turned over all of his records and assets; that the defendant's counsel on said August 12th advised counsel for the receiver that the said certain other records would be turned over to the receiver, but that no other assets would be turned over, and as to whether all of the records and assets were being or had been turned over he disclaimed any knowledge."

▇ Appellant, as the court found, was at the time of the above hearing under charges for embezzlement and for operating a bucket shop, and so he declined to testify on the ground that his testimony might tend to incriminate him and prove him guilty of numerous offenses against the laws of the United States and of the state of Missouri. It is thus clear that he made no explanation as to what had become of the $39,205 in cash. If such explanation was made or attempted so to be, by any other witness, the record fails to disclose the fact. The evidence given at the above hearing is not in the record, and so the court's finding imports absolute verity. In the hearing in the case at bar, it developed that appellant had at least two witnesses whom he might then have offered, and whom he offered on the hearing herein involved.

As a conclusion, the trial court found and concluded and ordered as follows:

"Wherefore, the Court finds and holds that the said defendant now has in his possession, owns and controls the above described records and assets, and without now determining whether he likewise has additional records and assets that should now be turned over to said receiver herein, the Court hereby orders and directs the said Harold J. Kattelman, defendant herein, to, within five days from the date of the issuance hereof, to deliver and turn over to said W. S. Madden, the receiver herein, the records, assets and cash above specifically set out and described."

Thereafter, and on December 27, 1935, the receiver filed a petition praying that an order be issued and served on appellant requiring him to show cause, on a day to be fixed by the court, why he should not be punished for contempt for refusing to comply with the order of the court

of November 23, 1935, last above quoted. The court issued an order directed to appellant to appear and make such showing, on January 3, 1936. Appellant appeared in person and by counsel. Continuances were asked and given till January 15, 1936, pending action by the Supreme Court on a writ of prohibition (Ex parte Kattelman, 56 S.Ct. 378), for which appellant had petitioned. Such latter petition having been denied by the Supreme Court (297 U.S. 692, 56 S.Ct. 384, 80 L. Ed. 985), the matter of committing appellant for contempt was heard on the order to show cause and the petition for commitment for contempt, filed by the receiver, with the result that the court found appellant guilty of contempt, for that he had failed and refused to comply with the order of court of November 23, 1935, and to turn over the cash, assets, property, books, papers, and other things in that order set forth to the receiver. Thereupon, it was ordered that he be committed to jail pending his purging himself of contempt by a compliance with that order.

Thereafter, and on July 10, 1936, appellant filed his motion in the District Court for release from custody, for that, as he alleged he had turned over all, or produced before the referee all and singular, the assets, property, securities, books, and papers set out in the order of his commitment, except certain items, which were not in his possession or under his control; and that having thus done, further compliance with said order was impossible. Among the items thus excepted, as not having been turned over, and as not being in his possession or control were two certain shares of stock, a Liberty bond for $50, the whereabouts of which he alleged was not known to him; his books of account, to wit, his ledgers, general journal book, cash books, securities received, purchased, and sold records; canceled checks, drafts, and stubs; correspondence files; loose leaves showing cash receipts and disbursements since January 1, 1934; one small index book, and cash in the sum of $39,205. No paper showing was made or stated in his petition for release, as to how, or when all these items had passed from his possession, or as to where they were, or who then had them, or under what claim or title they were held by the then holder of them, if any.

He further alleged, seemingly as an excuse for omitting to disclose the last-mentioned information that a certain indictment was pending against him in the United States District Court, as also two charges for crimes were pending against him in a state court and other investigations, as a basis of possible criminal charges, were being made by the United States, and that to compel him to testify would have a tendency to incriminate him.

The above application for release was denied by the trial court after a hearing in which no evidence, save possibly an affidavit made by appellant and embodying the facts last above recited, was offered. After such hearing the trial court, on July 10, 1936, denied appellant's application for release and remanded him to the custody of the marshal to be further confined in the city jail of the city of St. Louis, until he purged himself of the contempt of which the court had found him guilty.

Thereafter and on August 1, 1936, appellant filed by leave a so-called "return to the turn-over order of November 23, 1935, and to citation for contempt and motion of said Kattelman for release from custody." In this so-called return and motion for release, appellant averred that he had purged himself by tendering and delivering into the District Court all of the items set out and described in his application for release made July 10, 1936, and in his affidavit filed with the latter application (and in which affidavit he had then sworn were not in his possession or under his control), except two shares of preferred stock, a Liberty bond for $50, and cash in the sum of $39,205. As to this cash item, he stated that during the month of June, 1935, and therefore shortly before the involuntary petition in bankruptcy herein was filed against him he had "paid, delivered and turned over to his wife, Gladys L. Kattelman, the sum of $39,550, which had been in his hands since the years 1931 and 1932 trust funds belonging to his wife and her sister Mildred Logeman."

The above application of appellant for release from imprisonment contains the first and only alleged explanation of the manner in which he had disposed of the $39,205 in cash, and left this cash item, the shares of stock, and the bond as the only remaining matters in dispute, and the last barriers to the release of appellant.

The appellant's application for release on the ground that he had then fully purged himself of the contempt for which he had been committed was heard at great length, with the result that appellant was denied release and remanded to jail. In passing upon the matter, the court briefly stated his finding of facts and his conclusion of law thus:

"We have given much time to this hearing, and the respondent has been given every opportunity to make a full accounting. For the first time, in this hearing, the respondent now claims that the cash mentioned in the turnover order was paid over by him to his wife and sister-in-law in discharge of his indebtedness to them. It was also stated that the item of $39,205.00 had been disbursed by the respondent in ways that would incriminate him and the recipients.

"Mr. Kattelman has admitted in this hearing that he has by affidavit, and under oath, in open court, sworn falsely to the whereabouts of the items mentioned in the turnover order. He now admits that the items mentioned in the turnover order have been in his possession and under his control at all times since the institution of the bankruptcy proceedings. His testimony is, in a way, corroborated by the testimony of his wife and sister-in-law. This Court may take notice of the relationship of the witnesses to the respondent.

"This Court is not convinced that the item of $39,205.00 has passed out of the control of the respondent, and this Court is not bound to rely upon the evidence of one who admits that he has committed perjury in connection with the turnover order. The Court bears in mind that of this sum of money at least $9,000 of it is shown to have been used exclusively for the benefit of the respondent in employing lawyers and paying expenses incident to litigation.

"I am not convinced that the truth has been told in this matter and the application for release will be denied and the respondent remanded to jail."

■ The appeal herein from the order denying release was granted by this court. Numerous alleged errors are relied on for reversal. Some of these are in principle mere duplications of others we shall

discuss; others are bottomed on alleged facts which the record shows are lacking, or incorrect, and still others, not having been argued in the brief are deemed waived. Schnitzer v. United States (C.C.A.) 77 F.(2d) 233.

Those demanding review and decision are (a) that the petition for the appointment of a receiver was not sufficient, and the appointment of a receiver without notice to appellant (then an alleged bankrupt), and pursuant to such petition, rendered the entire proceedings void, ab initio; (b) that the decree of the court purporting to find appellant's noncompliance with the turnover order fails to make a full finding of facts and is not supported by testimony; (c) that since the evidence on appellant's application for release showed that the matter was one for a plenary suit, it was error to hear and determine it summarily, and in any such hearing the evidence to warrant remanding must be clear and convincing; (d) that the petition for adjudication as as involuntary bankrupt was insufficient to confer jurisdiction on the court; (e) that the turnover order of November 23, 1935, was void, because not made in response to any issue raised, or pleadings filed; and (f) the court erred in finding appellant guilty of civil contempt, since the contempt, if any, was a criminal contempt.

While the statute which provides for the appointment of a temporary receiver in cases where such appointment is "absolutely necessary for the preservation of the estate of the alleged bankrupt" does not in terms provide for or require the giving of a notice to such bankrupt, it may be conceded arguendo, at least, that the cases hold by the great weight of authority that when practicable and possible, such notice should be given. T. S. Faulk & Co. v. Steiner, Lobman & Frank (C.C.A.) 165 F. 861; Latimer v. McNeal (C.C.A.) 142 F. 451; In re Press Printers, etc., Co. (C.C.A.) 12 F.(2d) 660. But when notice to the alleged bankrupt is impracticable, or impossible for the reason that the alleged bankrupt has either absconded or cannot be found, notice, of course, since it cannot be given, need not be given. Latimer v. McNeal, supra; In re Francis (D.C.) 136 F. 912. In the case at bar, the application for the appointment of a receiver avers that appellant, the alleged bankrupt, "closed his place of business, as stated above, absented himself from his place of business and from his residence and has given neither creditors or customers any indication of when, if ever, he would resume operations." Nor is that all. The receiver was appointed on July 19, 1935. Thereafter, and on July 23, 1935, appellant filed a motion to vacate and set aside the order appointing a receiver. Neither the evidence nor the quantity and quality thereof, heard on this motion to vacate, is found in the record, but the record does disclose that "said motion to vacate heard, argued, submitted and overruled," and the reason of the thing inexorably constrains the conclusion, that lack of antecedent notice of the appointment of a receiver is cured and becomes immaterial, when a party, who objects to the appointment of a receiver, is later given an opportunity to appear and be heard on a motion to set aside and vacate such order of appointment. And so the cases hold. Supreme Council of Royal Arcanum v. Hobart (C.C.A.) 244 F. 385; 53 C.J. 61; Boyd v. Brown, 79 Colo. 568, 274 P. 181; West v. Chasten, 12 Fla. 315; Hancock v. Am. Bonding &c. Co., 86 Ill.App. 630. No appeal was taken by appellant from the denial of his motion to vacate the order appointing a receiver, and while no need exists, in view of the reasons already set out above, to rule the point, it seems both from principle and the authorities that the matter of the legal propriety of this appointment is now res adjudicata, and beyond the reach of collateral attack. Grant v. A. B. Leach & Co., 280 U.S. 351, 359, 50 S.Ct. 107, 74 L.Ed. 470; Ross v. Stroh (C.C.A.) 165 F. 628. So, as forecast by what is said above, we are of opinion that the appointment of appellee as receiver was not void and therefore the contention of appellant should on the point be disallowed.

The action taken by the court in finding that appellant had not purged himself of the contempt for which he had been committed to prison, and the denial of his application for release, did not constitute a decree, as his counsel insists; but it was merely an order made in the course of the administration of the bankrupt's estate. The trial court in such situation was not required to comply meticulously, if at all, with the provisions of rule in Equity No. 70½, 28 U.S.C.A. following section 723, which has no application.

The contention made is bottomed on a misconception of the nature of the proceeding. In passing, it may be said that the trial court did find that appellant had not fully complied with the turnover order made on November 23, 1935, or with the order of commitment of January 15, 1936, and concluded and ordered that he be remanded pending his full compliance, with such orders.

In connection with the above contention, the validity of the order made on November 23, 1935, and called in the record the turnover order, is again attacked, on the ground that it was neither an issue, nor among the issues up for judgment when it was made. We cannot on the plain record before us accept this view. The application of the receiver, which it is true, is styled in the record, "Petition etc. for commitment for contempt"; (by whom so styled, the record does not show) yet sets up that appellant had in his possession and under his control well-nigh all of the cash, assets, property, books, documents of the estate, except gutted office furniture and equipment; that all these things, which are described by items and in detail, appellant had hidden and concealed and failed and refused to turn over to appellee, as required by the order appointing appellee receiver. It is also true, that the prayer in the above-styled "Petition etc., for commitment for Contempt," prayed, not for commitment for contempt, but only for an order to show cause why such commitment should not be ordered on a full hearing.

The return of appellant, among other things, was a general denial, which, of course, included a denial that he was in possession and control, and a denial that he had hidden and concealed and failed and refused to turn over to appellee the cash, assets, and other things described in the application. The order to show cause was issued, by the court, appellant came in person and by counsel, a full and lengthy hearing was had before the court, and the court, treating the so-called "Petition etc. for Commitment for Contempt" as an application for a turnover order, made such an order and did not at all pass at that time upon the question of contempt. This was later done on a formal petition by the receiver. So, we think it is incorrect, if not idle to say, that the order of the court, called in the record a turnover order, was not within the issues. It may well have been not within the specific prayer of appellee's petition; but it seems to us quite clear that it was wholly within the issues voluntarily made by the appellant in his return. Appellant had his day in court, on two separate hearings, and so he could not have been in any way hurt or prejudiced. The contention rages over technical nomenclature only. We have thus reviewed the contention made, without considering at all whether appellant, failing to attack it directly by an appeal, may now raise it in a case such as this at bar.

It is further insisted by appellant that since the evidence heard on his application for release from custody showed that the situation called for a plenary suit, it was error to try it summarily. Again, the issues made called for no such suit, and the contention made begs the question by assuming that the trial court was in duty bound to know in advance what evidence would be adduced, and to believe the evidence adduced by appellant. The court was bound to no such duty. Yutterman v. Sternberg (C.C.A.) 86 F. (2d) 321; In re Abesbaum (C.C.A.) 70 F.(2d) 628; Rasmussen v. Gresly (C.C. A.) 77 F.(2d) 252.

The issues or the questions to be determined on appellant's application for release were simple. Appellant had been adjudged guilty of contempt for disobedience to, and noncompliance with, the turnover order of November 23, 1935. In and by that order he had been required to turn over $39,205 in cash; two shares of corporate stock and a certain Liberty bond (with other assets, property, and things, which in the course of time he had grudgingly and reluctantly turned over and which are no longer relevant here), which the court then found were in his possession or under his control. In order to purge himself of contempt and secure his release, the burden was on him [Reardon v. Pensoneau (C.C.A.) 18 F. (2d) 244, 245] to prove one of two things, (1) that he had turned over all of the assets, cash, property, and things, which the court found were in his possession, or under his control on November 23, 1935, or (2) by showing that due to inability occurring since the making of the turnover order, it had become impossible for him to do so. He was given a full opportunity in a three-days' hearing re-

sulting in the turnover order, to both plead and offer evidence, as to what he had done with the $39,205 in cash and with the securities mentioned. He failed and neglected in that hearing to make any explanation about the above items, or to offer any evidence about them, which evidence was just as easily obtainable at the hearing which resulted in the making of the turnover order, as it was when he at long last proffered it in the hearing at bar. So, he may not now go behind the order of November 23, 1935, and question it. It has become res adjudicata. Oriel v. Russell, 278 U.S. 358, 363, 49 S.Ct. 173, 174, 73 L.Ed. 419; Reardon v. Pensoneau (C.C.A.) 18 F.(2d) 244; Remington on Bankruptcy (3d Ed.) § 2428. In the Russell Case, supra, the Supreme Court said: "Thereafter on the motion for commitment the only evidence that can be considered is the evidence of something that has happened since the turnover order was made showing that since that time there has newly arisen an inability on the part of the bankrupt to comply with the turnover order." The trial court heard for some four or five days evidence offered by appellant in attempted explanation of how the $39,205 in cash had passed from his possession and control, some two or three weeks before the involuntary petition was filed against him. This evidence was objected to by appellee, but the court heard it subject to the objection; and it does not appear definitely from the record whether or not the court considered it or gave it any weight; impliedly, and from his oral opinion, we may conclude that he considered this evidence, but did not credit it. Under the Russell Case, supra, which as an inferior court we are bound to follow, such evidence was incompetent and immaterial, and trying the case here de novo we are constrained to give it no consideration.

The involuntary petition filed herein upon which (or upon an amended petition filed by leave) adjudication in bankruptcy was adjudged by default was verified "to the best of his (affiant's) information and belief." On this ground, appellant contends that the petition was so far insufficient as to render the adjudication absolutely void; hence, appellant contends that the court in bankruptcy never got jurisdiction of the bankruptcy case and has none now, and that all of the orders that have been made in it are absolutely void.

There are many decisions holding that a verification of a petition in involuntary bankruptcy which recites that the facts stated in such petition are true "to the best of the affiant's information and belief," or by words of similar import, does not comply with the general rules in bankruptcy, and so is insufficient. All of the cases, however, which counsel for appellant calls to our attention, and, indeed, all we have been so far able to find on our own investigation, are cases wherein the rulings were made on direct attack on the sufficiency of the verification, and not as herein, made by a collateral attack. The defect, although concededly such, is amendable, and not jurisdictional. In re Bieler (C.C.A.) 295 F. 78; Green River Deposit Bank v. Craig (D.C.) 110 F. 137; In re Farthing (D.C.) 202 F. 557, 566.

Save for this defect, the petition is fair upon its face and by its averments seems to conform to the statute, and to the rules and practice. If so it be, that there were extrinsic matters and things making for lack of jurisdiction, or ousting jurisdiction the record is silent about them. In this situation, at least, jurisdiction may not, as sought here, be collaterally attacked. In the case of Graham v. Boston, etc., R. R. Co., 118 U.S. 161, 179, 6 S.Ct. 1009, 1018, 30 L.Ed. 196, the Supreme Court said:

"In New Lamp Chimney Co. v. Brass & Copper Co., 91 U.S. 656 [23 L.Ed. 336], it was held that a decree adjudging a corporation bankrupt is in the nature of a decree in rem, as respects the status of the corporation; and that, if the court rendering it has jurisdiction, it can only be assailed by a direct proceeding in a competent court, unless it appears that the decree is void in form, or that due notice of the petition was never given." Here since the attack sought to be made goes to the petition only as has already been indicated, it follows that appellant cannot be heard to attack the petition at this late day (In re Garneau [C.C.A.] 127 F. 677; In re Plotke [C.C.A.] 104 F. 964), nor collaterally (New Lamp Chimney Co. v. Brass, etc., Co., supra). See, also, cases too numerous to cite, at page 258 et seq., title 11 U.S.C.A.

Further it is contended by appellant that the trial court erred in finding that

appellant was guilty of a civil contempt, in the face of the showing that the contempt, if any, was a criminal contempt. In the view, we have already indicated as to the lack of competency and materiality of the evidence heard on appellant's motion for purgation and release, the contention made that the contempt involved was criminal, seems utterly irrelevant. We find no ruling by the trial court that the contempt was a civil contempt. Clearly it was a civil contempt. Oriel v. Russell, supra; Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A.(N.S.) 874. Even if it had been a criminal contempt, appellant was not entitled to a trial to a jury. Russell v. United States (C.C.A.) 86 F.(2d) 389. Again, the contention begs the question. If we were of the view, as we are not, that the evidence offered by appellant as to his payment of alleged loans to his wife and sister-in-law was competent and material, and if the trial court considering such evidence had accorded to it full credit and credence, and so according it had found appellant had made compliance so far as was possible, it might then have had one of the legal constituents of a criminal contempt, in that, appellant might then have insisted on a fixed and definite punishment, or term of imprisonment, instead of being denied release from imprisonment, until he had purged himself of contempt by a full compliance with the commands of the turnover order. But neither of the above-named conditions precedent is found in the record, and one of them is not found in the law. And so it is not legally important or relevant here whether a purely civil contempt was or was not, in the course of subsequent proceedings, converted into a criminal contempt. The contention, in other words, is bottomed either upon a thing which is not the law, or upon things which never happened, and so further consideration of it would be merely academic.

Lastly, appellant contends that the trial court erred in deciding the case at bar before appellant had finished offering evidence, and without affording an opportunity to his counsel to be heard in oral argument. This contention must have been made through inadvertence; for it is squarely contradicted by the record in the case, which shows that upon concluding the examination of a witness on the aft-ernoon of August 4, 1936, counsel for appellant said to the court, "that is our case, but we would like an opportunity of arguing it tomorrow morning." The record further shows that the court granted the request of counsel for appellant and adjourned till August 5, 1936, at which time the record says, "counsel for the respective parties made their respective arguments to the court, at the conclusion of which a recess was had until two o'clock." At 2 o'clock the court denied appellant's motion in an oral opinion to which we have already made reference, and from which we have extensively quoted. Needless to say, there is scant excuse for so obvious a failure to examine the record, before error is urged.

From what has been said, it results that the case should be affirmed with costs, and so we order.