(20 Misc. Rep. 484.)

POCANTICO WATERWORKS CO. v. LOW et al.

(Supreme Court, Special Term, New York County. June, 1897.)

1. CORPORATIONS—ESTOPPEL TO DENY VALIDITY OF STOCKS AND BONDS.

The P. Co. was organized by eight persons, who subscribed for 11 shares of its stock. Immediately after its organization, it entered into contract with one L., who subscribed for 1,750 shares of the stock, under which contracts L. furnished all the money and did all the work necessary to construct and equip the company's plant, and received therefor $498,000 of the stock, including the 1,750 shares for which he had subscribed, and $350,000 of first mortgage bonds of the company. All these contracts were made and the stock and bonds were issued with the knowledge and consent of all the company's stockholders and directors. Several years later the company brought suit against L. and the trustee of the mortgage securing the bonds to restrain foreclosure of the mortgage, and declare the stock and bonds void. *Held* that, without first returning or offering to return to L. all that it had received under the contracts with him, the plaintiff could, under no circumstances, be entitled to any relief.

2. SAME—RATIFICATION.

*Held*, further, that, as the acts complained of had been approved at the time by all the stockholders, and had been afterwards acquiesced in by them, even if such acts were fraudulent, the corporation would be estopped to disaffirm them.

**3. SAME.**

A corporation cannot be said to be defrauded, in law or in fact, by any acts done with the full knowledge and consent of all the individuals who compose the corporation, nor does any right to complain of such acts afterwards accrue to the corporation by reason of the acquisition of its stock by other parties.

Action by the Pocantico Waterworks Company against Low and Ellis to cancel certain stocks and bonds. Complaint dismissed.

Franklin Bien, for plaintiff.

C. L. Atterbury, for defendants Low and Ellis.

David McClure, for defendant Farmers' Loan & Trust Co.

McLAUGHLIN, J. The plaintiff was incorporated on the 16th day of February, 1886, under chapter 737 of the Laws of 1873 and the acts amendatory thereof, with an authorized capital stock of $200,000, divided into shares of $100 each, for the purpose of furnishing water to certain villages in the county of Westchester, and other consumers. Shortly after the incorporation, the directors applied to the defendant Low for financial assistance in the construction of a system of waterworks for plaintiff. In pursuance of such request, he rendered valuable services to and furnished money and materials for the corporation, and to such an extent that in February, 1887, when subscriptions to the capital stock were first made, the plaintiff was indebted to him in upward of $100,000. The incorporators, eight in number, then subscribed for 11 shares of the capital stock, and the defendant Low for 1,750. The balance of the stock was not taken. On the 28th of May following the plaintiff entered into a contract with Low for the construction of a system of waterworks for it according to plans and specifications therein specified, for which it agreed to deliver to him or his assigns $498,900 of its capital stock, including the $175,000 theretofore subscribed for by him, and $287,000 of its first mortgage bonds; and, to enable it to carry out the contract, a special meeting of all its stockholders was held three days thereafter for the purpose of increasing the capital stock to $500,000. The capital stock was thus increased; and, for a like purpose, and about the same time, upon the consent of all the stockholders, the mortgage to secure $500,000 in bonds was executed. Under the terms of the contract the stock and bonds were only to be issued and delivered as the work progressed. Before the completion of the work, another or supplemental contract was made with Low, with the consent of all the stockholders, for the performance of additional work, and for which plaintiff agreed to deliver to him additional bonds to the amount of $63,000. Under these contracts Low commenced work, and built a complete system of waterworks for the plaintiff. The work was finished about December, 1888, and then, or in January, 1889, turned over to and accepted by plaintiff's board of directors, after an inspection by a committee appointed for that purpose. The action of the committee in accepting the works from Low was approved by all the stockholders at the annual meeting held in January, 1889. The stock and bonds were issued and delivered to Low as provided in the contracts. The plaintiff now brings this action to restrain the defendant trust company from foreclosing

the mortgage; and to have adjudged void the stock and bonds delivered to Low, upon the ground that they were issued and delivered in violation of the laws of the state, and in fraud of plaintiff's rights.

After a most careful consideration of the evidence offered upon the trial of this action, and the voluminous briefs submitted by counsel, I am unable to see how the plaintiff is entitled to the relief asked. The money used in constructing its works, laying its mains, and acquiring necessary land and riparian rights, was all furnished by Low upon the agreement of the plaintiff to deliver·to him the securities which are now sought to be invalidated. It is certainly a startling proposition that a corporation which has entered into a contract, with the consent of all its stockholders, to deliver to another portions of its stock and bonds for work to be done, materials to be furnished, and property to be delivered, can, after the full performance by the other party, in a court of equity procure a cancellation of the contract, and at the same time retain all the benefits received under it. A fundamental principle of the law is that one must do equity before he can ask that equity be done to him. And before one can ask that the equitable powers of the court be exercised for him he must show that he has at least acted honestly with reference to or in connection with the transaction of which he complains. This the plaintiff does not do, and therefore, at the very outset, conceding all that it claims, an obstacle is encountered which is fatal to the granting of the relief asked. The plaintiff is not entitled to any relief until it has returned, or offered to return, to Low that which it received from him. The ingenious theory of plaintiff's attorney that, had Low paid for his stock in cash, there would have been no necessity for the mortgage; or that the cash value of the work done, material furnished, and property delivered, including a reasonable profit, was not more than the face value of the stock, does not overcome the fact, if true, that the plaintiff agreed to deliver both the stock and bonds for the property which it now holds. That was the contract, and the plaintiff cannot be released from its terms while it holds on to all the property which it acquired by virtue of it. "That kind of plunder which holds on to the property but pleads the doctrine of ultra vires against the obligation to pay for it has no recognition or support in the law of this state." Seymour v. Association, 144 N. Y. 341, 39 N. E. 365; Barr v. Railroad Co., 125 N. Y. 277, 26 N. E. 145; Lee v. Oil Co., 126 N. Y. 586, 27 N. E. 1018; Gould v. Bank, 86 N. Y. 76. When the plaintiff returns or offers to return to Low all the property and benefits which it received from him under the repudiated contracts, then, and not until then, can it be heard upon the questions here presented.

Again, all of the acts complained of having been done at the request of the directors, with the approval of all the stockholders at the time of the performance of the acts, and acquiesced in by them for several years thereafter, even if the acts were fraudulent, the corporation cannot now be permitted to disaffirm them. The doctrine of equitable estoppel applies. Kent v. Mining Co., 78 N. Y. 187. In Seymour v. Association, supra, several persons formed a corporation, taking the entire capital stock, and then conveyed to it certain lands owned by them in common, and received in payment certain of its cor-

porate bonds. Subsequently the corporation sought to repudiate the issue of bonds on the ground that the land conveyed was not worth the amount of the bonds issued, and the court, Judge Finch delivering the opinion, said:

"While the technical form of this transaction was a sale by the eleven to the corporation, its substance was merely a change in the manner of holding. The sellers were the buyers. They sold as individuals and bought as a corporation, and no one else had any interest in the question of price or terms of sale. If they were the vendors on the one hand, dealing with themselves in a corporate capacity on the other, they were also the sole beneficiaries to be affected, and could not defraud themselves. The abstraction of the corporate entity should never be allowed to bar out and pervert the real and obvious truth. As beneficiaries, the stockholders necessarily assented to all the details of the arrangement, and no just criticism is possible either upon the legality or morality of the transaction. Evidence was given to show that the land conveyed was not worth the sum secured, but that is a totally immaterial fact. Whatever the price, it wronged no one, and could wrong no one, and accomplished nothing except to fix a primary limit to the anticipated profits."

In the case under consideration eight persons formed the plaintiff corporation, and to them were issued 11 shares of stock. They constituted the entire board of directors; and, as such, entered into the contracts with Low, and then, with full knowledge of what had been done, approved and accepted from him the work in full performance of the terms of the contract on his part. They are, therefore, not in a position to complain; and Low, to whom was issued all the remaining shares of stock, certainly is not. They constituted all of the stockholders; they were the component parts of and together were the corporation itself. Can it be said that injustice was done to any one because the property received was not worth anything near the face value of the stock and bonds delivered for it? It seems to me not. All of the persons interested, as we have just seen, not only consented to what was done, but were parties to the transaction. A consenting party cannot be injured. It may, therefore, be conceded that the contract was voidable as a scheme concocted by Low and the incorporators to share in the profits of construction of the waterworks, yet, inasmuch as all the members of the corporation were parties in or assented to it, no actual or legal fraud was practiced on the corporation, and it did not sustain any damage by reason thereof. Barr v. Railroad Co., 125 N. Y. 273, 26 N. E. 145. Nor does the fact that the persons now holding the stock of the plaintiff are different from those who held it at the time the contract was let and the works accepted make any other or different rule applicable. Kent v. Mining Co., 78 N. Y. 188; Parsons v. Hayes, 50 N. Y. Super. Ct. 29; In re Syracuse, C. & N. Y. R. Co., 91 N. Y. 1; Miller v. Magazine Co., 10 Misc. Rep. 311, 30 N. Y. Supp. 969. The plaintiff and all its stockholders at the time assented to the illegal transaction. It did not then have a cause of action, and it has not since acquired one. It follows that the complaint must be dismissed, with costs.

Complaint dismissed, with costs.