(26 App. Div. 499.)

DRAKE v. NEW YORK SUBURBAN WATER CO. et al.

(Supreme Court, Appellate Division, Second Department. March 15, 1898.)

1. CORPORATION—VALIDITY OF CONTRACT.

In an action by a holder of stock of a corporation, the complaint attacked the validity of an issue of stock under the terms of a construction contract, the consolidation of the company with another corporation, and a sale under a decree of foreclosure. It appeared that the contract was made and the stock issued through the sole stockholders at the time, that the transaction

was within the scope of the corporate authority, and that the work of the contractors under the contract had been fully performed, and accepted and enjoyed by the corporation and its successors. *Held*, that the transaction was not open to attack.

2. SAME—ESTOPPEL.

The stock held by plaintiff was a part of that issued to the contractors, and had been derived by him through them. *Held*, that there was no basis for holding the general transaction invalid, and at the same time sustaining the validity of plaintiff's stock.

3. SAME.

At the time of the consolidation objected to, plaintiff's predecessor in ownership received due notice of the proceedings; and apart from a suit brought by him in reference thereto, in which the complaint was dismissed, neither he nor plaintiff interposed any objection for many years. *Held*, that plaintiff was estopped from asserting any right as against any person who had in good faith dealt with the corporation, or received its securities.

4. SAME.

*Held*, further, that persons who had advanced money to the corporation for its corporate purposes upon the faith of negotiable instruments issued by it were entitled to protection, and the stockholders were estopped from setting up the defense of invalidity in order to secure for themselves property thus acquired.

5. EVIDENCE—FORMER JUDGMENT.

A prior judgment which might have been pleaded in bar to an action is, though not thus pleaded, admissible as evidence of the matters determined by it.

Appeal from special term, Westchester county.

Action by John R. Drake against the New York Suburban Water Company and others. From a judgment for plaintiff, certain defendants appeal. Reversed.

The New York & Mt. Vernon Water Company was organized in January, 1886, pursuant to the provisions of chapter 40 of the Laws of 1848. Prior to this time, and in 1873, the Mt. Vernon Water Company had been incorporated, with a capital of $25,000. The two above-named companies came into existence for the purpose of supplying the village of Mt. Vernon with water. The first named of these companies upon its organization purchased the stock of the other company, paying therefor its full par value. Thereupon the village, through constituted authority, granted to the New York & Mt. Vernon Water Company, and to its successors and assigns, the exclusive privilege of constructing, maintaining, and operating its waterworks in said village for a period of 20 years. The terms and conditions of this ordinance were accepted by the company, and the same became operative for the purpose contemplated. On March 20, 1886, three shares of stock of the company were issued, evidenced by certificates 1, 2, and 3, to F. Hopkinson Smith, George H. Holt, and G. D. L'Huilier, respectively. On the same day the said company, through its president, F. Hopkinson Smith, entered into a construction contract with Inman Bros., a co-partnership composed of William F. and George B. Inman. By the terms of this agreement the Inmans were to acquire all land and water rights and privileges necessary for the construction, maintenance, and supply of the waterworks, and to transfer the same to the company; also, to acquire, at their own cost and expense, permanent rights of way in and through all private property adjacent to the village, for running, repairing, and maintaining pipes, machinery, reservoir plant, etc., of the company; also, to furnish all labor and material required to lay the pipes, construct the mains, and place hydrants and appurtenances in compliance with the ordinance of the village, and in accordance with certain plans and specifications of the company. The company agreed to pay for such construction $199,700 of its capital stock, being its entire issue of capital stock, less the three shares issued as heretofore stated; also, $125,000 in the first mortgage, 20-year bonds of the company, or such amount of bonds as should be determined upon by Smith, Holt, and George B. Inman,—the exact amount to rep-

resent a fair compensation for the work under the contract, including a contractor's profit of 15 per cent.; these sums to be in full payment for the cost of construction, excepting land for a permanent structure, mentioned in the first section of the contract, and the damages, if any, sustained by adjacent property, unless otherwise mutually agreed. These bonds were to be a part of a series of 200, of $1,000 each, with interest coupons attached, and be secured by mortgage upon the property of the company. The stock was to be delivered upon the execution of the agreement and the bonds as the work progressed, and as determined by the trustees of the company. Upon the execution of the contract the company delivered to Inman Bros. certificate No. 4, for 1,997 shares of stock. On the same day Inman Bros. entered into a contract with the firm of Taintor & Holt, bankers, composed of Giles E. Taintor, George N. Holt, and G. D. L'Huilier, for a sale of the stock and bonds secured by virtue of their contract with the company. By the terms of this agreement, Inman Bros. were to sell $101,000 of the capital stock, being 1,010 shares, and $125,000 of the first mortgage bonds, for $112,500; the same being the equivalent of $900 for each bond and the stock. The stock was to be delivered at once, and the bonds as received from the company. Taintor & Holt agreed to pay the purchase price as the work progressed, not to exceed 60 per cent. in value of the work performed and materials furnished, and only upon the certificate of Smith that the work and materials were furnished in accordance with the contract between the company and Inman Bros.; the remainder to be paid to Smith upon the completion of the work in pursuance of the contract, and the acceptance of the work by the village authorities as provided in the ordinance. Inman Bros. completed their contract on the 16th day of August, 1886, and Taintor & Holt paid the money as agreed. Thereafter the works were operated by the water company. Inman Bros. surrendered the first certificate issued to them, and transferred a part of the remaining shares held by them. Among the shares, 430 were transferred to Moses R. Crow, represented by certificate No. 5. Crow subsequently surrendered this certificate, and procured certificates numbered from 26 to 33, inclusive; each certificate representing 10 shares of stock. The last certificate he transferred to Henry Huss on the 26th of June, 1886, in payment for services rendered to Crow and Inman Bros. in procuring water rights, abstracts of title, and other information, during the construction of the works. On the 11th day of January, 1887, Huss surrendered this certificate, and procured certificate No. 41 to be issued to him for 10 shares, which he thereafter, and on September 8, 1896, transferred to the plaintiff in this action, together with all rights and interests which in any wise accrued to him by reason of such ownership. In pursuance of its contract with Inman Bros., the water company made and executed a mortgage on the 1st day of May, 1886, to the Central Trust Company of New York, to secure its bonds to the amount of $200,000, payable in 20 years, with interest. The consent of the stockholders of the water company to the execution of this mortgage was duly given, and among such consenting stockholders was Crow. In July, 1887, the water company executed a second mortgage to the same mortgagee to secure the payment of an additional $100,000 of bonds. This mortgage had the consent of all the stockholders of the water company, including Henry Huss, who then held 10 shares. On the 1st of August, 1889, the water company, needing more money, executed a third mortgage to the same mortgagee to secure the payment of $200,000 of its bonds. This mortgage became a second lien upon the property, as the bonds secured by the second mortgage were exchanged for the bonds secured by the third, and the second mortgage was satisfied and discharged of record. The third mortgage was assented to by stockholders representing 1,905 shares out of 2,000.

On March 26, 1891, a majority of the stockholders of the water company determined to increase its capital stock and extend its operations. Acting under the advice of counsel, a new company was incorporated, under the name of the New York City Suburban Water Company, with a capital stock of $1,500,000, divided into 15,000 shares of $100 each. This company was created for the purpose of consolidating with the New York & Mt. Vernon Water Company, and in reality merging the latter into the former. After the incorporation of the Suburban Company, and on the 22d day of April, 1891, it executed a mortgage to secure an issue of $1,500,000 of bonds. This mortgage was assented to by all of its stockholders. At this time, however, but 10 shares of stock had been

issued, which the consenting parties held. The recital in the assent of the stockholders is that they owned and held the entire capital stock thereof, according to the provisions and intent of chapter 163 of the Laws of 1878. On the 28th day of April following, an agreement was made and entered into by and between the trustees of the two last-named companies for the consolidation of the two into one. This agreement provided, inter alia, that the name of the new company should be the New York City Suburban Water Company; that its object should be to supply water to the village of Mt. Vernon; that the new corporation should succeed to and be held liable to pay all the debts and liabilities of the consolidated corporations, and in particular the mortgage of the New York City Suburban Water Company, executed to the Atlantic Trust Company as trustee, should be an obligation of the consolidated company, as to the entire issue of bonds, the same as though such mortgage had been issued after consolidation; that the bonds should be held by the trustee, or disposed of by it, for the benefit of the consolidated company. Shares of stock of the consolidated company equaling the capital stock of the New York & Mt. Vernon Water Company, and 10 shares of stock issued by the Suburban Company, should be issued in lieu thereof and exchanged therefor. The remainder of the stock was to remain unissued at the time of consolidation, or, if issued, it should be represented by its par value in the treasury of the consolidated company. It was further agreed that any stockholder not consenting to consolidation should not be prejudiced by the valuation fixed by the agreement, but should have all the rights to a cash valuation of his stock or otherwise as allowed by law.

After the execution of this contract a meeting of the stockholders of the New York & Mt. Vernon Water Company was called for the 8th day of June, 1891, to determine whether consolidation should take place, pursuant to the terms of the written agreement, a copy of which was sent with the notice calling the meeting. A copy of this notice and agreement was received by Huss. On the 6th day of June, Huss and one Cameron, stockholders of the New York & Mt. Vernon Water Company, began an action in the supreme court to restrain the proposed consolidation, upon the ground that the same was illegal, and procured an injunction restraining the said companies from proceeding further in the matter. This action brought in as parties defendant the New York & Mt. Vernon Water Company, the trustees of said company, the Mt. Vernon Water Company, and the New York City Suburban Water Company. Motion was made at a special term to dissolve the injunction, which was denied. Thereupon an appeal was taken to the general term, where the order denying the motion was reversed, and the injunction was dissolved. From this order the plaintiffs appealed to the court of appeals, where the same was affirmed. While the appeal to the court of appeals was pending, a stipulation was entered into by the parties to the effect that, if the order was affirmed upon its merits, the complaint should be dismissed upon the merits, and the judgment should recite that the Mt. Vernon Water Company did not seek to, and would not, consolidate with the defendants, or either of them. Upon the affirmance of the order a judgment was entered, August 12, 1892, pursuant to this stipulation, whereby it was adjudged that the complaint of the plaintiffs be dismissed upon the merits, and that the plaintiffs were not entitled to the preliminary injunction. Pending this action, and pursuant to the notice hereinbefore referred to, the stockholders of the New York & Mt. Vernon Water Company, holding 1,855 shares of stock, voted in favor of consolidation, and the holders of the stock then issued of the New York City Suburban Water Company in like manner voted in favor of consolidation. A large majority of the stock of the New York & Mt. Vernon Water Company voting for consolidation was in the name of Smith, but in fact it was owned by Coffin & Stanton, a firm of bankers, who controlled the enterprise. On the 10th day of June, 1892, the required certificate was executed and filed, and the two companies became consolidated. The holders of the 1,855 shares of stock of the New York & Mt. Vernon Water Company subsequently exchanged such stock for the stock of the consolidated company. Huss did not exchange his stock, nor within the 20 days object to the consolidation, or demand payment therefor. After the consolidation the new company assumed control of all the property of both companies, and conducted the business for which it was incorporated. Of the $1,500,000 bonds authorized and secured by the mortgage to the Atlantic Trust Company, $400,000 were to be used in retirement of the bonds

of the New York & Mt. Vernon Water Company, and $900,000 for extending and improving the plant. This provision was inserted in the mortgage. Thereafter bonds amounting in the aggregate to $195,000 were issued, and exchanged for the bonds of the New York & Mt. Vernon Water Company, secured by its third mortgage to the Central Trust Company of New York, leaving five bonds of $1,000 each outstanding, and secured by this mortgage. All of the bonds were issued by the Atlantic Trust Company in compliance with the essential requirements of the mortgage. $495,000 of the bonds appear to have been issued before consolidation of the corporations was effected, but after the agreement of consolidation was executed, and the remainder after consolidation. The whole amount issued was $1,270,000. They were all issued upon the order of the president of the New York City Suburban Water Company, and delivered to Coffin & Stanton. What disposition was made of the bonds by Coffin & Stanton, aside from those used to retire the bonds of the New York & Mt. Vernon Water Company, and improve and extend its works, does not clearly appear. At the time of the failure of the firm of Coffin & Stanton, they were the holders of $480,000 of the bonds which were hypothecated as collateral security for money owing by the firm. The remainder of the bonds are held by various persons, corporations, and banks in the United States and England. When Coffin & Stanton failed, Newman Erb was appointed receiver of the estate, and entered upon his duties. Default having been made in payment of interest upon the bonds, Erb, in pursuance of a provision contained in the mortgage, requested the Atlantic Trust Company to foreclose the same. Thereupon a foreclosure action was instituted, and in usual course carried to a judgment of foreclosure and sale. Pending this foreclosure, holders of bonds in an amount exceeding $1,000,000 deposited the same with the Atlantic Trust Company; and a committee of such bondholders was appointed, who executed and delivered a trust agreement providing for the rights of the bondholders and the reorganization of the company. By the terms of the judgment of foreclosure and sale, so much of the bonds and overdue coupons were authorized to be received in payment of the purchase price of the property as should be the equivalent of so much of the purchase money as would be distributable and payable thereon. Acting under the trust agreement and the authority of the judgment, the property was bid in by Newman Erb and Charles Bard, a committee representing the committee created by the trust agreement, for $50,000. Thereafter, in pursuance of the same authority, Erb and Bard and their associates incorporated themselves under the name of the New York Suburban Water Company. The certificate of incorporation provided, inter alia, that there should be paid upon the new bonds 2½ per cent. per annum for the first five years, and an additional 2½ per cent., or so much as shall be earned, and at the end of five years interest at the full rate of 5 per cent. per annum; that the bondholders should receive of the securities of the new company for each $1,000 bond a new first mortgage bond, par value of $800, and 10 shares of full-paid common stock, $1,000; that negotiations were then pending for a sale of the property, and, in the event a sale was not effected during the period, the bondholders were compelled to suffer an abatement of a part of the interest upon the new bonds; the stock to be held in trust and deposited with the Atlantic Trust Company for a period not to exceed five years, and certificates of beneficial interest issued to the bondholders in lieu thereof; the stock so held to be used to elect the board of directors from among the bondholders; the trust created to leave the committee with power to dispose of the entire stock, subject to the approval of the owners of three-fourths in amount of certificates of beneficial interest. After the company was organized, it took possession of the property, carried on the business, and on June 10, 1895, executed to the Atlantic Trust Company, as trustee, a mortgage upon its property to secure $1,500,000 of its bonds, pursuant to the provisions of the agreement of reorganization. Of these bonds, $1,010,500 have been issued to the holders of the bonds of the New York City Suburban Water Company, who deposited their bonds under the agreement, $130,000 have been issued for cash, and $39,500 have been delivered to the president of the company for its use. These bonds are now held by various parties, and are widely scattered. The property purchased at the foreclosure has been conveyed to the new corporation. The original incorporators of the New York City Suburban Water Company were all employés of Coffin & Stanton, as clerks or otherwise, except Gleason, who was the counsel for the firm, and

conducted the proceedings resulting in the incorporation of this company, and the consolidation, as hereinabove stated. Ludwig, the president of the first Suburban Company, signed all of the bonds, and made requisition of bonds in the aggregate of $495,000, which were delivered to Coffin & Stanton before consolidation was effected. The president of the consolidated company was Clarence D. Turney, the manager of Coffin & Stanton; and it was upon his requisition that the remainder of the bonds issued were received from the trust company, and delivered to the firm of Coffin & Stanton. The plan of consolidation originated with Coffin & Stanton, and was carried out at their instigation. They used some of the stock and bonds for their private purposes, and as a re-enforcement of security for loans, but how many went in this direction the record does not disclose. Newman Erb occupied for a time an office with Coffin & Stanton, and did some business for them. By his declarations it appeared that he was more or less familiar with the operations of Coffin & Stanton, and to some extent with their operations in connection with the water companies.

In the action of foreclosure and sale by the Atlantic Trust Company, Turney filed an answer in which he admitted the allegations of the complaint, and upon this admission the subsequent applications to the court were made. Upward of a year after the foreclosure and sale of the mortgaged property, Huss assigned his interest to the plaintiff, as hereinbefore stated, and thereafter the plaintiff brought this action. The complaint demands as relief that the New York Suburban Water Company be adjudged to hold the property in trust for the discharge of valid liens of the New York & Mt. Vernon Water Company, to be ascertained; that the mortgage or deed of trust is not a valid lien upon the property, or any of it; that the judgment of foreclosure and sale, and the reorganization proceedings, be vacated and set aside; that the proceedings of consolidation are null and void, and the property of the New York & Mt. Vernon Water Company was not affected thereby; that the stock held by the receiver of the New York City Suburban Water Company, and the bonds issued to Coffin & Stanton, or any substituted stock or bonds, are null and void; and for such further relief as may be just. Upon the complaint and the proof the court rendered a judgment adjudging, among other things, that the plaintiff is entitled to recover his proportionate share of the proceeds of the property of the defendant the New York & Mt. Vernon Water Company, as upon its dissolution on June 17, 1892; and it directs that the property as described be sold, subject only to the lien of the first mortgage for $200,000, and of the second mortgage for $5,000, and that the property be free of any lien by virtue of the mortgage executed by the New York City Suburban Water Company, or the judgment of foreclosure obtained by the Atlantic Trust Company thereunder, or of the mortgage executed by the reorganized company; that none of the parties to this action are entitled to share in the proceeds of the sale, except the plaintiff; that the property be sold at public auction for cash, subject only to the aforesaid liens; that the referee named pay to the plaintiff $10/145$, and costs of the action, and that he hold the balance for further disposition as shall be provided upon the foot of the judgment; that the plaintiff have leave to bring in the owners of 135 shares of the capital stock of the defendant the New York & Mt. Vernon Water Company, not owned or held by parties to this action, that their interest and share in the proceeds may be determined.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

A. J. Dittenhoefer (I. M. Dittenhoefer, on the brief), for appellant the New York Suburban Water Co.

J. Langdon Ward, for appellant the Atlantic Trust Co.

Roger M. Sherman, for respondent.

HATCH, J.   The judgment rendered in this action proceeds upon the theory that the issue of stock of the New York & Mt. Vernon Water Company in fulfillment of the construction contract was in fraud of the rights of the stockholders of that company,

in consequence of which such stock, so far as it participated in the vote for consolidation, is void as against the plaintiff in this action, and others similarly situated; that the creation of the New York City Suburban Water Company and the subsequent consolidation were in pursuance of a fraudulent scheme to obtain control of the property of the New York & Mt. Vernon Water Company for little outlay in money, and subject it to the lien of a mortgage largely in excess of the value of the property, by reason of which fraud the whole transaction was vitiated; and that neither the parties who conceived the scheme, nor the persons who thereafter became possessed of the stock and bonds of the consolidated company, by purchase for value or otherwise, acquired any rights which entitle them to consideration in the judgment. It is quite evident that the judgment rendered is radical and sweeping in its character and effect. It sharply sets the time where the fraud began, and, in the determination of property right, leaves no doubt upon which side stand the sheep, and upon which side stand the goats. As the questions to be determined are important, and vitally affect the property rights of a large number of persons, who are wholly cut off if the judgment is to stand, we have given it careful attention, and extended the discussion beyond ordinary limits. Is it true that the stock issued in payment for construction, which participated in the vote for consolidation, is void? There is no dispute of fact in connection with this matter. Inman Bros. appear to have fulfilled their contract to the letter. They constructed the works which they contracted to construct, and the company and the village of Mt. Vernon accepted the same, and entered into the enjoyment of the property, and it and its successors have been in the enjoyment of the property since. This judgment wipes out the consideration, in part, which was paid for that work; and it sustains, in the hands of the plaintiff, a part of the same consideration which it wipes out when found in the hands of other parties. There can be no question but that the New York & Mt. Vernon Water Company was competent to contract for the construction and extension of its plant, and to pay therefor in its stock and bonds. The statute under which it was created authorized it so to do. It was required to construct its works under the franchise granted by the village of Mt. Vernon. Inman Bros. were under no legal disability to enter into such contract. There was no creditor in existence to complain, or to charge that the property of the corporation was improvidently or fraudulently misapplied. There was no stockholder who could be wronged. The whole issue of stock was held by four persons. Inman Bros. had 1,997 shares. Smith and L'Huilier were, respectively, the president and secretary of the company, and held 2 of the 3 other shares. They executed the contract upon the part of the company with Inman Bros. They attested the certificate which represented the shares delivered to Inman Bros. Holt, who held the other share, interposed no objection, and does not now complain. His firm immediately bought from Inman Bros. a large number of the bonds, and received a large block of the stock, for which bonds and stock it paid cash.

These were all the persons interested in the transaction. The company contracted, it obtained that for which it contracted, and no person or corporation then in existence, or ·which subsequently came into existence, as an interested party, can be heard in complaint of a transaction by which no person was defrauded, and each obtained what it contracted to obtain. The legal principle is well settled which sustains such a transaction. Woodruff v. Railway Co., 93 N. Y. 609. But, further, the company received the benefits of the contract in the added value to its plant, and they and their successors have enjoyed it since. The plaintiff in no wise offers to restore to Inman Bros., or their successors in interest, the value which they gave for the stock. It was expressively said by Judge Finch, in speaking of a case involving this principle:

"That kind of plunder which holds onto the property, but pleads the doctrine of ultra vires against the obligation to pay for it, has no recognition or support in the law of this state." Seymour v. Association, 144 N. Y. 341, 39 N. E. 365; Waterworks Co. v. Low, 20 Misc. Rep. 484, 46 N. Y. Supp. 633.

The last case is quite similar to the one we are presently discussing, and supplies all that is needful by way of discussion and reasoning upon this branch of the case. The judgment herein saves from condemnation 145 shares of stock, although all of such shares, except possibly 3, came from the same source as the outlawed shares; and even these may not be saved if they are "owned or held by parties to this action" other than the plaintiff. It is somewhat difficult to grasp how the 145 shares purged themselves from the taint of fraud which attached to the whole. By the vote of 1,855 shares for consolidation, a consummation clearly lawful in itself, the penalty of death has been inflicted, while the 145 shares have become regenerated, and arise from a new birth. We know of no legal principle from which such a result can be deduced. It is claimed by the plaintiff, and found by the court, that Huss rendered service to the company, and that the company issued the stock to him for such service. Such finding and claim are without support in the evidence. The 10 shares of stock were transferred by Crow to Huss, and Crow received his shares from those issued to Inman Bros., by transfer from them. Huss testified that the service which he rendered was during the construction of the works. "Both Mr. Crow and Mr. Inman asked me to get those things for them, if I could, for the use of the company. It was their business to acquire water rights for the company. I supposed they were under contract to do such for the company." It is true that he speaks of being requested by Smith to perform service when he was president. But such statement does not change the fact that the work which he did was of a character which Inman Bros. were to perform under the contract. He knew such was the fact, rendered the service, and received the pay from the stock which passed through them. Huss therefore stood upon no other or different footing than the other holders. His transferee could acquire no other rights than he held. Cook, Stocks, & S. § 40, and cases cited in note. If the stock issued to Inman Bros. was invalid, then it follows that the stock issued to Huss was also

invalid, and could not be made to furnish a basis for this action. We think, however, that this stock was valid at the time of its issue, and in its entirety it remains untainted with any vice. We must assume that the steps taken to effect the consolidation were in all respects valid, and in accordance with law. This has been so decided in the action brought by Cameron and Huss to restrain the consolidation. Cameron v. Water Co., 133 N. Y. 336, 31 N. E. 104. This judgment was not pleaded in bar of the present action, and consequently it was not admissible in evidence as constituting a bar. It was, however, admissible as evidence; and as evidence it is conclusive as an adjudication of the same facts, if in issue between the parties. Krekeler v. Ritter, 62 N. Y. 372. It appears from the complaint in that action that among its causes of action was the claim that the trustees of the New York & Mt. Vernon Water Company had caused to be organized the New York City Suburban Water Company, with a nominal capital of $1,500,000; that it had no assets, and was formed for the purpose of absorbing the other two companies. It further set up the making of a mortgage to the Atlantic Trust Company, and that it was proposed to make this mortgage a lien upon the property of the New York & Mt. Vernon Water Company, in pursuance of the agreement of consolidation which it was averred was made. The judgment entered in that action is therefore conclusive as evidence, so far as the present complaint seeks to make available these acts upon the part of the consolidating companies as a ground of defeating the valid existence of the Suburban Company, the right to consolidate, and the effect of such consolidation. Williamsburg Sav. Bank v. Town of Solon, 136 N. Y. 465, 32 N. E. 1058; House v. Lockwood, 137 N. Y. 259, 33 N. E. 595. Upon these questions the plaintiffs in that action contended for the same things in this respect that the plaintiff does in the present action, and upon these questions we think he is concluded by the former judgment, as he is a privy in interest with Huss. But, aside from the question of the conclusiveness of this record upon this subject, as a technical rule we regard the decision in that case, embracing as it necessarily did the validity of the vote to consolidate, and the agreement of consolidation, as conclusive of the questions. The agreement of consolidation was before the court in that case, and the facts set out in the affidavits embraced all the matters and things leading up to the execution of that agreement. The court must have considered those questions in reaching the conclusion at which it arrived, as they were in the case, and urged in the brief of counsel. Huss was fully aware of all the proceedings. He was served with a copy of the agreement of consolidation, and notice of meeting of the stockholders to vote thereon. After the adjudication which dismissed his complaint in the former action, he took no part in the consummation of consolidation, interposed no objection thereto, and gave no sign either of approval or disapproval; but he and his assignor slept upon whatever rights they possessed for five years after consolidation was effected, and for ten years after the issue of the stock to the Inmans. It became the duty of Huss, if

he desired to assert any right, to act promptly; and, failing so to do, he became bound by acquiescence therein, and is estopped from asserting any right as against any person who has in good faith dealt with the corporation, and received its securities. Kent v. Mining Co., 78 N. Y. 159; 2 Mor. Priv. Corp. § 630. And this is the rule, even though there be affirmative fraud in the transaction, where such fraud is known, or is subsequently ascertained, and no steps are taken either to arrest or correct it. Oil Co. v. Marbury, 91 U. S. 587; Barr v. Railroad Co., 125 N. Y. 263, 26 N. E. 145. No public interest was affected by this transaction. It is purely private in its character, extent, and injury; and therefore consent, acquiescence, or laches can validate the act. In these questions was also involved the validity of the 1,855 shares of stock which voted for consolidation. There has never been any pretense but that Coffin & Stanton became possessed of these shares in a lawful manner, by purchase, and thereby acquired the right to vote upon them, either in their own name, or in the name of their transferee. Huss was as well acquainted with all of these facts at that time as he was at any subsequent time. It therefore follows that, so far as the proceedings which led up to the consolidation of these companies are concerned, there is no basis in law upon which they may now be interfered with, and the persons who acquired rights thereunder must be held to be protected in such rights as they acquired.

There exists strong ground for saying that the mortgage held by the Atlantic Trust Company became a lien upon all of the property held by the consolidated company. But we do not find it necessary in this action to determine or discuss this question. It is sufficient now to say that, whether such mortgage be valid or invalid, persons who have parted with their money or property upon the strength of it as a security are entitled to protection, and the company and its stockholders are estopped from asserting its invalidity. Carpenter v. Mining Co., 65 N. Y. 43. It is evident that some of the bonds were issued for cash, which the company received. It is certain that the payment of $195,000 upon the third mortgage of the New York & Mt. Vernon Water Company arose out of the proceeds of the bonds, and the same is true so far as money was placed in the company to construct and extend its works, and pay the floating debts which had existence when consolidation took effect. Money advanced for these purposes, upon the faith of negotiable instruments issued by the company, became debts of the company, whether the holder could look to any particular security for their payment or not. In view of this rule, it is to be borne in mind that this action is brought by a stockholder seeking to enforce his right in the property of the company. But his rights in this respect are subordinate to the rights of the creditors of the company. We may assume that the mortgage to the Atlantic Trust Company was invalid, that its foreclosure was collusive and fraudulent, that the committee of reorganization had notice of all the facts, and that the reorganized company is honeycombed with fraud. But all this does not wipe out the fact that

the New York City Suburban Water Company still exists as a corporation, that it has creditors, and that those creditors who have taken its securities in good faith are entitled to be paid. No stockholder can institute his action, and secure to himself a proportionate share of the property of the corporation represented by his stock, without regard to the rights of creditors and in preference thereto. The court will not grant relief to such stockholder by ordering a sale of the whole property of the corporation, and distribute the proceeds among its stockholders, without any provision for paying creditors. Sequestration of the property of corporations may not be had under such a proceeding, and in such an action. It is opposed to the settled policy of the state in distributing the property of corporations. Code Civ. Proc. § 1784 et seq. This judgment makes no provision for any creditor, except such as are secured by mortgage, and wipes out bonds and other obligations to the extent of nearly a million and a half of dollars. It distributes the property of a corporation among a certain named class of stockholders. It gives to no creditor, aside from those parties to this action, an opportunity to be heard or prove his claim, and places beyond his reach the property which is his security. Whatever be the rights of the plaintiff under the action which he has brought, we may safely say that it does not embrace the judgment which he has secured, and can never embrace any right which leaves out of view the creditors of either corporation; for if we should treat the New York City & Suburban Water Company as nonexistent, and revive the New York & Mt. Vernon Water Company for the purpose of reaching its property, the claim of its technical dissolution by consolidation (a claim which seems to us absolutely inconsistent with the holding that the consolidation was invalid) would not prevent the court from the application of proper rules for the protection of its creditors and others in the distribution of its property. Whatever may have been the frauds of Coffin & Stanton, it would be most unconscionable to permit the stockholders to avail themselves of the property which has been paid for by innocent creditors. Such a course would work a judicial fraud, far worse than anything which has heretofore transpired respecting these corporations. In no view can this judgment be sustained. It should therefore be reversed, and a new trial granted, with costs to abide the final award of costs. All concur.