JOHN R. DRAKE, Respondent, *v.* THE NEW YORK SUBURBAN WATER COMPANY and THE ATLANTIC TRUST COMPANY, Appellants, Impleaded with THOMAS P. WICKES, as Receiver, etc., Respondent, and Others.

*Mortgage foreclosure — after-acquired property, of a company consolidated with the mortgagor — a judgment is conclusive — stockholders who voted for the consolidation are bound by the consolidation agreement — when equity will not intervene for a stockholder who has a small interest.*

On the foreclosure of a mortgage executed by a water company which, subsequent to its execution, has been consolidated with another company of the same name, under an agreement that the mortgage should be "the obligation of the consolidated company as to the entire issue of bonds, and in all respects with no less force and effect and validity than if the said bonds and mortgage were issued by the company after the consolidation," the court, without deciding whether the provision in the mortgage subjected any after-acquired property of the corporation to the mortgage lien, was of opinion that the provisions of the consolidation agreement with reference to the mortgage were conclusive upon the stockholders of the company who voted for such agreement; even though not valid as to the remaining stockholders; and that an action having been brought by the mortgage trustee to foreclose it, in which it was asserted that such after-acquired property was subject to the mortgage lien, a judgment therein sustaining such claim, even though erroneous, was not void or subject to collateral attack, except for fraud.

In such a case, the remedy of a stockholder who believes that there is a valid defense to the mortgage, is to apply to the court for leave to intervene and set up such defense, or, after the entry of judgment, to vacate it and set it aside, and to be allowed to come in and defend; but in such case the court should not set aside the sale of the property on the application of a stockholder who is the owner of but 10 out of 2,000 outstanding shares of stock of the consolidated company, the entire property of which is valued at $200,000, and particularly where he is the only stockholder who seeks to avoid the trans-

action of which he complains, and where he, evidently regarding it as more profitable not to defend himself against the alleged wrongs upon him, during the time of their commission, awaits their infliction, and thereafter brings an action in equity for their redress.

APPEAL by the defendants, The New York Suburban Water Company and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 6th day of June, 1898, upon the decision of the court rendered after a trial at the Westchester Special Term; also an appeal by the defendant, The New York Suburban Water Company, from the order or direction awarding the plaintiff an extra allowance of $2,000.

*J. Langdon Ward, A. J. Dittenhoefer* and *I. M. Dittenhoefer,* for the appellants.

*Roger M. Sherman,* for the plaintiff, respondent.

*George C. Lay* and *Benjamin B. Kenyon,* for the receiver, respondent.

CULLEN, J.:

The details of the controversy out of which this action springs are fully narrated in the report of a prior appeal to this division of the court. (26 App. Div. 499.) The new trial ordered on the previous appeal was had before the same justice who originally decided the cause. He has rendered judgment in favor of the plaintiff, declaring that the mortgage executed by the New York City Suburban Water Company (the first of that name) was not a lien on the property of the consolidated corporation (also named the New York City Suburban Water Company); that the judgment entered in the action against the consolidated company to foreclose such mortgage was fraudulent and void, and has directed that the same, and also the deed to the defendant The New York Suburban Water Company, made on the sale under such judgment, be set aside, and that a receiver be appointed to take possession of the property on behalf of the New York City Suburban Water Company, 2d, which latter company he has directed to elect officers and proceed to perform its corporate function, recognizing the plaintiff as a stockholder thereof to the extent of ten shares.

The foundation of the claim that the judgment in the foreclosure action is void is the proposition that the mortgage foreclosed was not a lien on the property sought to be sold for its satisfaction. This mortgage was executed by the New York City Suburban Water Company, 1st, prior to consolidation. The mortgage contained a provision subjecting any afterward-acquired property of the corporation to the mortgage lien. The agreement for the consolidation between the last-named company and the New York and Mount Vernon Water Company contained a provision to the effect that the mortgage should be " the obligation of the consolidated company as to the entire issue of bonds, and in all respects with no less force and effect and validity than if the said bonds and mortgage were issued by the company after the consolidation." The property acquired by the new company through the consolidation had, previous to the consolidation, been the property of the Mount Vernon Company, and the question presented here is whether either the provision in the mortgage concerning after-acquired property, or the provision in the agreement for consolidation, was sufficient to subject that property to the lien of the mortgage. It has been held in the Federal courts that such a provision in a corporation mortgage is operative on the property acquired by a new corporation formed from the consolidation of the corporation executing the mortgage with others. (*Compton* v. *Jesup*, 68 Fed. Rep. 263.)

In *Polhemus* v. *The Fitchburg R. R. Co.* (123 N. Y. 502) the Court of Appeals referred to this decision in the United States court, but declined to pass on the question. In delivering the opinion of this court on the former appeal, Mr. Justice HATCH said: " There exists strong ground for saying that the mortgage held by the Atlantic Trust Company became a lien upon all of the property held by the consolidated company. But we do not find it necessary in this action to determine or discuss this question." There is still some difference of opinion among the members of this court on the question, and we do not find it necessary even yet to decide it. We all agree, however, that the provisions of the consolidation agreement, with reference to the mortgage, were conclusive on the holders of the 1,855 shares of the stock of the Mount Vernon Company who voted for that agreement, even though it be assumed that they were not valid as to the holders of the remaining shares.

When, therefore, the trustee under this mortgage brought its action to foreclose it, and asserted the claim that the property was subject to the mortgage lien, its claim, even though erroneous, was not necessarily fraudulent. If the trustee was wrong, still it had a right to be wrong if it acted in good faith. In most litigations (partition suits excepted) one party or the other must be in the wrong, and it is for the very purpose of determining which is right that courts are instituted and actions brought. The claim of the trustee, if not actually right, at least was debatable, and a fair subject for litigation. The allegation in the complaint, that the mortgage was executed by the defendant who then owned the equity of redemption, was erroneous, but the error was in no way indicative of fraud. The names of the mortgagor company and the new consolidated company were identical, and the error was entirely natural. The defendant answered in the foreclosure suit by Turney, its president, admitting the allegations of the complaint. The learned trial court has found that the judgment was fraudulent and collusive, in that it was entered upon this answer, and that both sides of the litigation were substantially controlled by one Erb, the receiver of Coffin & Stanton, a banking firm who had held the majority of the stock of the defendant company, and also to whom the bonds had been issued. We do not think this is sufficiently proven. The trustee, the Atlantic Trust Company, represented all the holders of the bonds outstanding. The learned trial judge found that at least $610,000 of the bonds had been pledged by Coffin & Stanton as collateral security for loans. The evidence tends to show that all the remaining bonds were in the hands of third parties. These holders had the right to litigate their claim to a mortgage lien on the property. The trustee represented all these bondholders, and we are of opinion that the evidence is not sufficient to charge it with fraud in instituting the litigation. The invalidity of some of the bonds could not affect the validity of the mortgage or the validity of the proceedings for its foreclosure. (*Graham* v. *Boston, Hartford & Erie R. R. Co.*, 118 U. S. 161.) Indeed, we do not see how the invalidity of all the bonds, or of the mortgage itself, could affect the validity of the judgment of foreclosure, unless that judgment was obtained through fraud. The court rendering the judgment had jurisdiction both of the subject-matter and of the parties, and its judgment,

though erroneous, cannot be void or be subject to collateral attack except for fraud.

The plaintiff or his predecessor in the ownership of the stock had ample remedy in the foreclosure suit. There is no proof that either was ignorant of the prosecution of that suit. If he thought that there was a valid defense to the mortgage, he could have applied to the court to intervene and set up such a defense. Such was the course taken by the stockholders in *Farmers' Loan & Trust Co.* v. *N. Y. & N. R. Co.* (150 N. Y. 410). Even now application may be made in the foreclosure action to vacate and set aside the decree and let the plaintiff in to defend; but unless the foreclosure judgment is void because fraudulently obtained, the remedy of the plaintiff is by motion in that action.

We are further of opinion that, under the circumstances of this case, the plaintiff should not, either in this action or by motion in the foreclosure suit, be permitted to set aside the sale of the property to its present owner, the New York Suburban Water Company, unless that company refuses to pay the plaintiff the fair value of his interest in the property. The plaintiff is the holder of but 10 shares of the capital stock of the consolidated company of 2,000 outstanding. In other words, his aliquot interest in the property was a one two-hundredth part. As already said, the holders of 1,855 shares out of the 2,000 are estopped from asserting the invalidity of the mortgage lien. The trial court has found that at the time of the consolidation, which the plaintiff's assignor opposed, the value of the whole property of the consolidated company was under $200,000. If this finding is to be construed as intending to give the value of the property apart from the liens, then the plaintiff's interest was valueless, as the property was subject to $400,000 of mortgages. Construing it, however, most favorably to the plaintiff, as being $200,000 above the incumbrances, the value of the plaintiff's interest would be $1,000. The property sold at the foreclosure for $50,000. The plaintiff is the only stockholder who seeks to avoid the transactions of which he complains. He is appealing to a court of equity whose first rule is that he who seeks equity must do equity. Here the holders of a million and a half of bonds are interested in having the foreclosure sale stand. Assuming that some or many of those bondholders are not entitled to

protection, it is evident that in any question relating thereto the other bondholders are far more interested than the plaintiff, because it appears that the property is not worth the amount of the mortgage. The bondholders, instead of litigating among themselves their respective rights to share in the mortgage, adjusted their disputes under a scheme for reorganization. They may have thought, and well thought, that it was wiser to make concessions each to the other than to embarrass the property with a costly and lengthy litigation. If this foreclosure suit is set aside and the judgment opened, the parties will be remitted to a litigation that may last for years before it is finally composed. The expense of such a litigation would be many times the value of the plaintiff's interest. By enforcing such a litigation the plaintiff can subject the parties to this expense, or compel them to buy him out at an exorbitant price. We do not think he should be allowed to take such a course. While it is probable that the future historian of the jurisprudence of this country will criticise severely the leniency with which the courts of to-day have looked upon stock jobbing schemes for the issue of bonds for fictitious debts and stock not representing property, and foreclosures for transferring title, and the like, we are clear that to absolutely set aside this foreclosure would be to enact a greater wrong than any that may have been committed in the transactions which led to the creation and issue of the bonds. The plaintiff, or his predecessor in title, evidently regarded it as more profitable not to defend himself against the alleged wrongs upon him during the time of their commission, but to await their infliction, and thereafter bring a suit. When he stands simply on his legal rights and proceeds in a court of law, he may be entitled to the benefit of that course, however much wrong it may inflict on innocent parties; but when he finds himself compelled to appeal to equity for relief, a different rule should prevail. He should be entitled merely to full indemnity.

The judgment and order appealed from should be reversed and a new trial granted, costs to abide the final award of costs.

All concurred.

Judgment reversed and new trial granted, costs to abide the final award of costs.