The question certified is answered in accordance with this opinion.

---

## In re DAVISON.

(District Court, D. Rhode Island. February 28, 1906.)

### No. 491.

1. BANKRUPTCY—DISOBEDIENCE OF ORDER TO SURRENDER PROPERTY—CONTEMPT PROCEEDINGS.

A bankrupt should not be committed for contempt for failing to obey an order requiring him to turn over money or property to his trustee without a hearing on the motion to commit, nor unless the court is satisfied on such hearing of his present ability to comply with the order.

2. SAME—SUFFICIENCY OF EVIDENCE.

While the admitted receipt of goods or money by a bankrupt and repeated refusals to explain or account for their disappearance may be a sufficient ground for a contempt order, they do not necessarily· establish the present ability of the bankrupt to restore the property or money to his trustee, or that his failure to comply with an order requiring him to do so is contumacious and willful, and all the facts and circumstances in each case should be considered.

3. SAME—ABUSE OF POWER TO PUNISH FOR CONTEMPT.

The court will not commit a bankrupt woman for contempt for failing to comply with an order to turn over property or money, where it is in doubt as to her ability to do so, in order to compel her husband or other persons who appear to have been the principals in the fraudulent conversion of the property to come to her relief.

In Bankruptcy. On motion of trustee to adjudge bankrupt in contempt of court.

J. Jerome Hahn, for trustee.
P. Henry Quinn, for bankrupt.

BROWN, District Judge. Upon a hearing, the referee found that the bankrupt had concealed and was concealing money or property from her trustee, amounting to at least $1,000, and directed that she turn over to the trustee such money or property within 10 days from the date of his order. Upon a petition for review, the findings and order of the referee were sustained, and a decree of this court was entered on the 13th day of December, 1905, ordering said bankrupt to pay to her trustee in bankruptcy $1,000 in money, or to turn over to him merchandise concealed by her from said trustee, amounting in value to at least $1,000, within 10 days from the date of the entry of that decree. On December 18, 1905, the bankrupt filed under oath a statement and petition for relief from the decree of this court. This statement contains a reiteration of her denials made before the referee that she had concealed property belonging to the estate. It also sets up that she has no property or money in her possession or control, belonging to the bankrupt estate, and knows of no such property that has not been surrendered to said trustee. She also avers, under oath taken before a notary public December 14, 1905, that she has "absolutely no money, property, or means to enable her to comply with the order of the court," and she avers that said order, if unreversed, will result in her being certified as in contempt, and in her subsequent imprisonment for her refusal to comply with an order that she is utterly unable to meet. The petition prays that the decree be vacated. On February 2, 1906, a motion was made by the trustee in bankruptcy that the bankrupt be declared in contempt of this court for her refusal to obey its said decree of December 13, 1905. This motion is supported by the affidavit of Mendell W. Crane, trustee, to the effect that no money or merchandise has been turned over to him in accordance with said orders.

The Circuit Court of Appeals for the First Circuit, in its opinion of February 16, 1906, in Re Annie M. Cole, Bankrupt, (Petition of Annie M. Cole) 144 Fed. 392, held that the proceeding for contempt is of a different character from one resulting in a mere order for the payment of money to the trustee in bankruptcy, and that the record should show that the bankrupt had had a day in court as to that part of the order of the District Court directing a commitment in default of obedience to the order to pay over the money or property to the trustee.

The attorney for the trustee has not asked for further hearing, but desires that a contempt order be entered upon the record as it now stands, namely, an order upon the bankrupt to pay over money, and an answer under oath by the bankrupt that she is without means to do so. It is quite true that a part of the statement of the bankrupt is inconsistent with the findings of the referee approved by the decree of this court on December 13th. It is not necessary, however, to decide whether, upon contempt proceedings, the bankrupt is concluded as to matters involved in a former hearing, or whether she may retry the former issue under a different rule as to the quantum of proof (see In re Cole, supra), since a portion of the bankrupt's answer relates to her present ability to comply with the order of this court.

The authorities seem to be agreed that no contempt order should be made unless the court is satisfied of the present ability of the bankrupt to comply with the decree for the payment of money. While the admitted receipt of goods or money, and repeated refusals to explain or account for their disappearance, may lead to a belief in a present possession or control, and be a sufficient basis for a contempt order (In re Levy & Co., 15 Am. Bankr. Rep. 166, 142 Fed. 442), yet it does not seem to me that the question of the present ability of a bankrupt to comply with an order should be determined upon an artificial rule of proof to be applied irrespective of the circumstances of the particular case.

That a person has been guilty of fraudulent appropriation of property, and has concealed it by falsehood or perjury, does not always lead to the belief that the failure to make restitution upon an order is contumacious and willful. Where the amount concealed is small, and such as might readily have been spent, or where the circumstances are such as to indicate that the bankrupt was merely the person in nominal control of the business, and merely the instrument of others in a scheme for defrauding creditors, it is quite reasonable, under such circumstances, to believe even a person who has been guilty of fraudulent appropriation, and of fraudulent statements, when she swears that she has not now the fruits of the fraud, nor any control over them.

I find myself in very serious doubt as to the present ability of this bankrupt to comply with the decree of this court. I regard it as extremely probable that what she says as to her present inability to pay over money in compliance with the order is true. She has sworn to it, and exposed herself to criminal punishment if her oath is false. The circumstances of the case tend to show that she was in nominal rather than actual control of the business, and that the scheme of fraud was arranged and perpetrated by others rather than by herself.

If, having doubts of her present ability to pay, I should commit this bankrupt to confinement in jail upon a conjecture that her husband or other persons, actual principals in the fraud, may come to her relief with a sum of money equal to that which she has been ordered to pay over, I should, in my opinion, be abusing the power to punish for contempt. Creditors who sell to persons of doubtful or unknown financial standing, and of unknown or suspicious character for integrity, and who, by their own lack of ordinary diligence, have become the victims of fraud, should proceed for redress under the ordinary methods of legal procedure, and cannot expect to use, as an ordinary agent in the collection of debts, the power to imprison for contempt, which is to be applied only in cases of contumacious resistance to the orders of court. While there is no doubt of the power of the court to enforce its order for the surrender of property or money, when clearly satisfied that it is within the power of the bankrupt or other person to comply with such order, I am not so satisfied in this case.

Motion denied.