## In re AHLSTROM & ENHOLM CO.

District Court, D. Massachusetts. May 11, 1928.

No. 38109.

**1. Bankruptcy ⬅288(14)—Fair preponderance of evidence is sufficient to warrant turn-over order.**

Order requiring officer of bankrupt corporation to turn over property of bankrupt to trustee need only be supported by a fair preponderance of evidence.

**2. Bankruptcy ⬅288(14)—Court must be satisfied by clear and convincing evidence that refusal to obey turn-over order is willful (Bankr. Act [11 USCA]).**

On petition under Bankruptcy Act (11 USCA) to punish bankrupt's officer for contempt for refusing to obey turn-over order, issue is whether respondent has present ability to comply with referee's order, or whether his failure to comply therewith is willful or unavoidable, and court must be satisfied by clear and convincing evidence of his willfulness, before it is justified in committing him for contempt.

**3. Bankruptcy ⬅288(14)—Findings on which turn-over order was based are at least prima facie evidence that bankrupt then had possession or control of property, not overcome by unsupported denial.**

Findings on which order directing that bankrupt's property be turned over to trustee was based are at least prima facie evidence of the fact that at time of order the property was in possession or control of bankrupt, and they throw on respondent burden of showing by affirmative evidence his inability to comply therewith, and his mere unsupported denial is not sufficient to overcome the prima facie case.

**4. Bankruptcy ⬅288(14)—Commitment for contempt for failing to obey order to turn over property should be denied, if evidence leaves substantial doubt of respondent's contumacy (Bankr. Act [11 USCA]).**

In contempt proceedings under Bankruptcy Act (11 USCA) for failing to obey order to turn over property, it is the duty of the court, notwithstanding referee's findings or respondent's denial of possession of property, to carefully consider all the evidence before it, and, if such consideration leaves a real and substantial doubt respecting respondent's contumacy, petition for commitment should be denied.

**5. Bankruptcy ⬅238—Evidence held to show bankrupt's officer could produce or account for bankrupt's journal, and he will be adjudged in contempt for failure to obey turn-over order (Bankr. Act [11 USCA]).**

On petition under Bankruptcy Act (11 USCA) to adjudge officer of bankrupt corporation in contempt for refusing to obey order requiring him to turn over to trustee corporation's journal, containing important corporate records, evidence *held* sufficient to show beyond any substantial doubt that respondent could either produce or account for journal, if he chose to do so, and he will therefore be adjudged in contempt of court for willful disobedience of referee's order.

In Bankruptcy. In the matter of the Ahlstrom & Enholm Company, bankrupt. Petition by trustee to require Carl E. Ahlstrom, bankrupt's treasurer, to show cause why he should not be adjudged in contempt of court for failing to obey turn-over order. Respondent adjudged in contempt.

Horblit & Wasserman, of Boston, Mass., for respondent.

Reuben Hall, of Boston, Mass., for trustee.

BREWSTER, District Judge. In the above-entitled matter Carl E. Ahlstrom, treasurer of the bankrupt corporation, was ordered by the referee to turn over to the trustee in bankruptcy a journal containing important records of the corporation. This order was affirmed by the District Court. The order not having been complied with, the trustee brings this petition, upon which the treasurer has been cited to show cause why he should not be adjudged in contempt of court.

When the proceeding was first brought on for hearing and some evidence submitted, the case was continued to permit the respondent to apply to the referee for a rehearing, in order that he might show that the missing book was not essential to a full investigation of the affairs of the bankrupt. The rehearing was denied. The matter was again set down for trial, when evidence was offered by and in behalf of the respondent, including

evidence tending to show that the importance of the book had been exaggerated.

I find, however, that the book contained entries of transactions between the corporation and its officers, including this respondent, which were necessary to the full disclosure of the dealings between the respondent and the bankrupt.

[1] The respondent, when before the referee, denied that he had possession of the book or that he knew where it was. He testified that he had diligently searched for it without success. The referee nevertheless ordered him to turn over the journal to the trustee, which action necessarily involved a finding that the book was then (June 2, 1927) in the possession or control of the respondent. See In re Levin (C. C. A.) 15 F.(2d) 3. This court has already held, and I think properly, that the evidence warranted the turn-over order. In that proceeding a fair preponderance of the evidence is sufficient. In re Cole (C. C. A.) 144 F. 392; In re Marcus et al. (D. C.) 21 F.(2d) 483.

[2] But the proceedings now before the court raise a somewhat different issue, with a heavier burden of proof upon the moving party. The issue now is whether the respondent has the present ability to comply with the order of the referee, or, in other words, whether his failure to comply is willful or is unavoidable. On this issue I take it the court must be satisfied beyond peradventure of the contumacy, before it is justified in committing for contempt. The proof must be, to use the language of the cases in this circuit, "clear and convincing." In re Cole, supra; In re Levin, supra; In re Davison (D. C.) 143 F. 673. See, also, In re Walt (D. C.) 17 F.(2d) 588.

In other jurisdictions we frequently meet with the statement that the court must be satisfied beyond a reasonable doubt of the bankrupt's ability to comply. Stuart v. Reynolds (C. C. A.) 204 F. 709; Free v. Shapiro (C. C. A.) 5 F.(2d) 578; Walnut Creek Milling Co. v. Grain Products Co. (D. C.) 21 F.(2d) 380; In re Magen (D. C.) 14 F.(2d) 469.

I gather from a consideration of the cases that this extraordinary burden is placed upon the trustee, not because of any presumption of innocence, nor because the proceeding is of a criminal nature, for the authorities are almost unanimously of opinion that the proceeding is for civil and not criminal contempt. In re Cole, supra; Bessette v. W. B. Conkey Co., 194 U. S. 324, 24 S. Ct. 665, 48 L. Ed. 997; In re Nevitt (C. C. A.) 117 F. 448; In re Prela (C. C. A.) 23 F.(2d) 413; In re Walt, supra; In re Marcus et al., supra; Freed v. Central Trust Co. (C. C. A.) 215 F. 873 at 876.

The rule is based upon other and more appropriate grounds. These are the seriousness of the consequences, the futility and injustice of depriving the individual of his liberty for failing to do the impossible, and the inevitable loss of dignity that would result if the court were compelled to retreat after it realized that imprisonment failed to enforce obedience. These are the reasons which Judge Rose gave in Kirsner v. Taliaferro (C. C. A.) 202 F. 51, for his statement that the conviction that the bankrupt had the power to comply "should be as nearly absolute as human conclusions ordinarily can be."

[3] Many of the cases cited, and other comparatively recent decisions, have dealt with the burden of proof and the evidential value of the findings of the referee in the summary proceedings, and also with the weight to be given to the assertion of the bankrupt that he was unable to comply. From these cases it is possible to deduce the proposition that the findings of the referee and the court, upon which the turn-over order was based, are at least prima facie evidence of the fact that at the time of the order the property was in the possession or control of the bankrupt. Shulman et al. v. U. S. (C. C. A.) 18 F.(2d) 579; In re J. H. Small Shoe Co. (C. C. A.) 16 F.(2d) 205; Free v. Shapiro, supra.

The courts of the Second circuit seem to have gone so far as to consider the order of the referee final and conclusive on the question. In re Magen, supra; In re Oriel et al. (C. C. A.) 23 F.(2d) 409; In re Prela, supra.

But, whether the referee's findings are to be deemed conclusive or only prima facie evidence, they operate to throw upon the respondent the burden of going forward with affirmative evidence to show his inability to comply, and it is held that his unsupported denial is not sufficient to overcome the prima facie case. In re Prela, supra; Reardon v. Pensoneau (C. C. A.) 18 F.(2d) 244; In re Walt, supra; Good v. Kane (C. C. A.) 211 F. 956; In re Weber Co. (C. C. A.) 200 F. 404.

With this latter proposition I fully concur. If a turn-over order can be defeated by the mere assertion, even though made under oath, that the bankrupt has not the present ability to comply therewith, the order becomes an idle gesture, and the power of the court to enforce its decrees suffers serious impairment.

The foregoing rules of evidence applica-

ble to contempt proceedings under the Bankruptcy Act (11 USCA) appear to be thoroughly established by the cases, but there may be a danger that we overemphasize the importance of what Judge Brown has aptly termed "artificial rules of proof." In re Davison, supra, at page 675.

[4] The result of my examination of the cases is a conviction that it is the duty of the court, notwithstanding the findings of the referee or the denial of the respondent, to carefully consider all of the evidence laid before the court in the contempt proceedings, and that, if such consideration leaves a real and substantial doubt respecting the contumacy of the respondent, the petition for commitment should be denied. With this duty clearly in mind we are prepared now to consider the evidence in the case.

[5] The petition in bankruptcy was filed March 21, 1927. The evidence shows that the books of the bankrupt corporation were kept in a safe in the office of the corporation, to which safe the bookkeeper and president of the corporation had access. In November the respondent Ahlstrom was ill for three or four weeks, and during this period the journal and accounts receivable ledger were taken to his house. The accounts receivable ledger was returned. The journal has never been seen since, so far as the evidence discloses. It contained transactions covering the period from early 1926 to December of that year. The bankrupt employed an auditor, who sometimes took the books from the office to work upon them, but he testified that the book was not in his possession. Both the respondent and his wife testified to diligent searches, made in every place where it was likely to be found, without result. Nothing appears in the conduct of the respondent inconsistent with his claim that he would produce the book, if he were able so to do.

As already stated, the book contained important entries bearing upon the respondent's transactions with the corporation. If he were disposed to be dishonest, he had a motive and an opportunity to withhold, conceal, or destroy the book. This, plus the finding that the book was last seen in his possession, rendered it incumbent upon the respondent to offer some explanation or reasonable hypothesis to account for his inability to produce it. I would have no doubt about the contumacy of the respondent, were it not for the fact that he is only one of several who had access to the books and who might be able to account for its loss. The bookkeeper and auditor have both testified, but the president of the corporation has not; but the respondent has offered no evidence to warrant the court in even suspecting that the president of the corporation could disclose the whereabouts of the journal.

I am forced to hold, therefore, in this case that the evidence is clear and convincing. I am persuaded beyond any substantial doubt, that the respondent could either produce, or account for, the journal, if he chose so to do.

I therefore adjudge the respondent in contempt of court for willful disobedience of the referee's order, and an order for commitment until further order of court may be entered, and a capias for his arrest may issue, such process to be stayed for a period of 10 days from the date hereof, in order that the respondent may give notice of appeal, if he desires so to do.