**LEVY et al. v. CHARLESWORTH.**

No. 9992.

Circuit Court of Appeals, Eighth Circuit.

Dec. 15, 1934.

Rehearing Denied Jan. 18, 1935.

See, also, Charlesworth v. Levy Meat Co., 73 F.(2d) 953.

Henry A. Bundschu, of Kansas City, Mo. (Gerson B. Silverman, of Kansas City, Mo., on the brief), for appellants.

Harry L. Jacobs, of Kansas City, Mo. (I. J. Ringolsky, William G. Boatright, and Ringolsky, Boatright & Jacobs, all of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

SANBORN, Circuit Judge.

The essential facts out of which this controversy arises are briefly as follows: On August 12, 1930, Levy Bros. Meat & Provision Company, a corporation, was adjudged a bankrupt in the United States District Court for the Western District of Missouri. The appellants were former officers and stockholders. J. F. Charlesworth was appointed trustee in bankruptcy. On his petition and after a full hearing, the referee entered an order requiring the appellants to turn over to the trustee certain sums of money which the referee found belonged to the bankrupt estate and which they had retained and concealed from the trustee. This order was made on May 17, 1932. On July 30, 1932, each of the appellants petitioned for a review, and on April 14, 1933, the order, in so far as it affected them, was confirmed. The order of confirmation required the appellants to deliver to the trustee in cash, within ten days, the amounts mentioned in the turnover order, or to show cause why each of them should not be punished for contempt. No appeal was taken from the turnover order or from the order confirming it, and such orders became final. The appellants, however, within ten days from the entry of the order of confirmation, filed written responses thereto, in which they asserted that there was no proper basis for the turnover order, alleged their inability to comply with it, and asked that the court set it aside. On March 31, 1934, a hearing was had. The trustee offered in evidence the petition for the turnover order, the order itself, the petitions for review, and the order of April 14, 1933, confirming the turnover order and directing its enforcement. Counsel for the appellants thereupon stated: "The issue, as I see it, is not as to the merits of the Referee's Order, or the merit of Your Honor's finding, finding these men are indebted or that they concealed assets. I take it that that has more or less been decided. But the main issue here today is the ability of the respondents (appellants here) to comply with the Turn-Over Order." The appellants

then testified in effect that they had no present ability to comply with the order and were virtually penniless; that, while they had been the officers and in control of the bankrupt corporation prior to its bankruptcy, they were thereafter employed by the Levy Meat Company, which was controlled by Leon Levy, the brother of two of the defendants and the brother-in-law of the third; that all of them lived with Leon Levy without paying board, and received for their services from the Levy Meat Company, by which they were employed, little more than their actual expenses; that they had no interest in the Levy Meat Company. The court below did not believe that the appellants were without ability to comply with the turnover order, adjudged them guilty of contempt, and ordered them committed to the county jail until they complied with the order, which was to become effective in thirty days. They appealed from the order of commitment.

The appellants' contentions are somewhat elusive, but they urge that the court below was not justified in committing them for contempt, because it should have received in evidence, upon the hearing, certain proceedings in an equity suit which had been brought by the trustee against Leon Levy and the Levy Meat Company to set aside, as fraudulent, the transfer of certain assets made by the bankrupt prior to bankruptcy, which proceedings they regarded as being inconsistent with the conclusion which the court reached in the contempt matter. They further argue that the court below, because of the lapse of time between the entering of the turnover order and the contempt proceeding, could not properly commit them. They contend that their responses to the order compelling them to comply with the turnover order were motions to set aside that order, and that, until the court ruled upon those motions, it could not place upon them the burden of showing their inability to comply with the order. They also say that the findings of fact which were made the basis of the turnover order show upon their face that the appellants neither received nor had assets with which to comply with that order.

■ The only evidence which was in any way pertinent upon the hearing in the court below was evidence which tended to show that, after the turnover order was made and had become final, something had transpired which had disabled the appellants from complying with it. Oriel et al. v. Russell, 278 U. S. 358, 49 S. Ct. 173, 73 L. Ed. 419; Sarkes v. Wells (C. C. A. 6) 37 F.(2d) 339, 340.

The proceedings in the equity case which the appellants, although they were not parties to it, say should have been received in evidence, referred to matters which occurred prior to bankruptcy. If there ever was any inconsistency between the decree in the equity suit and the order appealed from, such inconsistency has now vanished due to the reversal of the decree in the equity suit by this court. See J. F. Charlesworth, Trustee in Bankruptcy of Estate of Levy Bros. Meat & Provision Co., Bankrupt, v. Levy Meat Co. & Leon Levy, 73 F.(2d) 953, opinion filed November 26, 1934.

■ The lapse of time between the turnover order and the commitment of the appellants for contempt is something about which they have no just cause to complain. It is true that in Oriel et al. v. Russell, 278 U. S. 358, 364, 49 S. Ct. 173, 174, 73 L. Ed. 419, supra, the court said: "A turnover order must be regarded as a real and serious step in the bankruptcy proceedings, and should be promptly followed by commitment, unless the bankrupt can show a change of situation after the turnover order relieving him from compliance." But that is not saying that, where a turnover order requires the repayment of money, mere lapse of time will preclude its enforcement. Delay is not the equivalent of proof of inability to comply, although unquestionably a turnover order in bankruptcy proceedings should be followed up promptly.

■ Whether the responses of the appellants in the court below amounted to motions to vacate the turnover order was a question which was not presented to the lower court or passed upon by it, and, for that reason will not be considered by this court. See In re Schulte-United, Inc. (C. C. A. 8) 59 F.(2d) 553.

■ We are not at liberty to consider the alleged defects in proceedings leading up to the turnover order. Sarkes v. Wells (C. C. A. 6) 37 F.(2d) 339, supra; In re Schulte-United, Inc. (C. C. A. 8) 59 F.(2d) 553, 559, supra; Oriel et al. v. Russell, 278 U. S. 358, 49 S. Ct. 173, 73 L. Ed. 419, supra.

The order appealed from is affirmed.