**In re McMORDIE.**

District Court, N. D. Texas,
Dallas Division.

July 11, 1940.

McLean & Scott and Walter P. Luck, all of Fort Worth, Tex., for the motion.

ATWELL, District Judge.

In May, 1937, the referee for the Fort Worth division of this district certified the applicant to the court for a contempt order.

Upon a regularly called hearing, it was shown that the bankrupt was engaged in stock brokerage business in Fort Worth, and that he became rather heavily involved to a number of people for funds, whereupon he withdrew from the bank a considerable sum of cash. This cash, he carried around with him for a few days, and then deposited some of it in an envelope, with a Dallas hotel. He also put some in a deposit box at a Fort Worth hotel.

Involuntary bankruptcy proceedings were filed against him, and in due time he was examined, and eventually turned over to the trustee the funds which he had left at the two hotels. Those funds were much less than the amounts which he had withdrawn from the bank. Upon his refusal to disclose the whereabouts of the remainder, the contempt proceeding was instituted.

These facts showing that the property which he was ordered to surrender was a part of his bankrupt estate, and that he had control of the same, In re Rosser, 8 Cir., 101 F. 562; In re Wilson, D.C., 116 F. 419; In re Adler, D.C., 129 F. 502, such control and possession is presumed to remain in and with him until he satisfactorily accounts to the court for its disposition or disappearance. Boyd v. Glucklich, 8 Cir., 116 F. 131; Good v. Kane, 8 Cir., 211 F. 956; In re Magen Co., 2 Cir., 10 F.2d 91; Reiss v. Reardon, 8 Cir., 18 F.2d 200; Matter of M & M Mfg. Co., Inc., 2 Cir., 71 F.2d 140. Compare Stuart v. Reynolds, 5 Cir., 204 F. 709.

The bankrupt cannot escape an order for its surrender by simply denying under oath that he has it. In re Meier, 8 Cir., 182 F. 799; Mueller v. Nugent, 184 U.S. 1, 22 S.Ct. 269, 46 L.Ed. 405; Boyd v. Glucklich, 8 Cir., 116 F. 131.

The bankrupt was committed to prison, and he was ordered to stay there until he purged himself of the contempt by turning over the property so found to be withheld.

This confinement was in the Tarrant County jail. While so committed, he was indicted by the grand jury of that division for a violation of the National Bankruptcy Act. Upon trial he was convicted and sentenced to four years in the reformatory.

That trial was had with the consent of this court.

After that conviction, another motion was made before this court. The bankrupt testified that when he withdrew the cash from the bank he was intoxicated. That the bills which he did not deposit in the hotels were placed in his desk, in different pigeon-holes, and that later, when he moved out, the funds must have become lost or destroyed in some manner unknown to him, because he could not find them. He did not know what he had done with them in his intoxicated state. He said he did not disclose this intoxication at his original hearing, because he was ashamed to confess it.

There were other details of this bizarre happening which it is unnecessary to relate now, but it must be added that the trustee and the attorneys for the trustee did not object to a modification of the order. It did not appear to the court that it was appropriate, or that the testimony justified any change in the order that had been theretofore entered.

The bankrupt, upon permission of this court, was taken to the reformatory, and during the last year of that imprisonment was transferred to the penitentiary at Leavenworth. During the time of such incarceration, the bankrupt sought upon two or three occasions, through different sources, to secure modifications or such changes as would permit his liberation on parole, or his liberation to visit his kin, or for a modification of the contempt order. These attempts were more or less academic and resulted in nothing.

About the first of July of the present year, he finished his penitentiary sentence, and the marshal for this district returned him to jail in obedience to the contempt order.

The motion to vacate must be overruled.

The testimony taken today discloses another weakness. The details of the withdrawals of the cash, and the care with which it was kept, as well as the cunning displayed in its hiding at the two hotels, at Dallas and Fort Worth, is hardly what an intoxicated man would do.

The question of the disposition of the property by the bankrupt is not an open question. The court has found that he was in possession of the property and he has been directed to turn it over. Those orders were made sometime ago at a previous term of court, and they are not now subject to an attack such as is made here.

The only question that can be raised here is whether the bankrupt is presently able to comply with that order. Toplitz v. Walser, 3 Cir., 27 F.2d 196; Sarkes v. Wells, 6 Cir., 37 F.2d 339; Matter of Weisberger, D.C., 43 F.2d 258; Levy v. Charlesworth, 8 Cir., 74 F.2d 495; Clements v. Coppin, 9 Cir., 72 F.2d 796.

Long confinement is insufficient, per se, to demonstrate inability to comply with such an order. In re Abesbaum, 2 Cir., 70 F.2d 628; Matter of Straus, D.C., 7 F.Supp. 891.

Where one is unable or unwilling to explain what he has done with property which he is ordered to turn over, it is reasonable to infer that he still has it in his possession. Matter of Magen Co., 2 Cir., 10 F.2d 91; Walnut Creek Milling Co. v. Grain Production Co., D.C., 21 F.2d 380; Morrison v. Regus, 5 Cir., 22 F.2d 804; In re Wiener, D.C., 32 F.2d 329.

Returning, therefore, to the sole question which this court, at this time, may consider, to wit, the bankrupt's ability to comply with the order, we find ourselves again struggling with an explanation which appears to be an afterthought, and which was not disclosed at first, because of reluctance to relate so discreditable a happening.

This balance that he was ordered to return is approximately $12,000. These funds were in bills of rather large denominations, tens, twenties, and on up to $1,-000, and were drawn by him from his bank account, in preparation for the defrauding of his creditors, to whom the funds belonged. When one seeks to defraud just

claims by fraud, his acts are viewed with deep distrust from their inception. One court has held that where a contemner has been guilty of fraud, it would deprive him of a discharge under the insolvent laws. Lewes v. Barnett, 6 Ch.D. 252; People v. Spalding, 2 N.Y. Leg.Obs. 232.

There is a well-marked current, however, in the holdings which harks back to the ability of the person to comply. In re Ahlstrom & Enholm Co., D.C., 26 F.2d 268; Goldman v. Silverman, 1 Cir., 62 F. 2d. 421; Hendryx v. Fitzpatrick, C.C., 19 F. 810. This is not difficult to understand. Justice is not a dead, stagnant stream— it is a living, vital force. Courts are constantly seeking for it. They strive for it. Sometimes it is felt that they pray for omniscient powers that they may find it when it is elusive and obscured by evasiveness and cupidity, selfishness, and avarice.

The discretion which the law vests in the court to inquire, at any time, into the ability of the contemner to pay is not fanciful. It is a substantial repository, to be opened by evidence; not sympathy, not phrases, but evidence, that will bear scrutiny and have the appearance and ring of truth.

Relief is denied.